## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Tea Olive I, LLC d/b/a Stock+Field,

    Debtor.

Case No. 21-30037 (WJF)

(Chapter 11)

**OBJECTION OF WORLDWIDE
DISTRIBUTORS TO MOTION OF THE
COMMITTEE FOR DERIVATIVE
STANDING TO PURSUE CLAIMS
AGAINST WORLDWIDE**

Worldwide Distributors ("**Worldwide**"), by and through its undersigned counsel, hereby submits this Objection ("**Objection**") to Motion of the Committee for Derivative Standing to Pursue Claims Against Worldwide ("**Motion**").

### INTRODUCTION

The Committee of Unsecured Creditors for Tea Olive I, LLC (the "**Committee**") asserts that Tea Olive I, LLC (the "**Debtor**") has consented to allow it to bring an adversary proceeding against Worldwide. Consent is only one of three prongs of the test that the Committee must satisfy in order to be granted derivative standing to pursue claims on behalf of the Debtor. Specifically, to grant relief, the court must also find that the suit proposed by the Committee is (a) in the best interest of the bankruptcy estate, and (b) is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. The Committee cannot meet these burdens. The Committee's complaint, on its face, fails to state a claim on which relief can be granted. To succeed on its claim, the Committee must show that the Debtor did not receive reasonably equivalent value in exchange for the transfer, which it claims is the filing of a UCC financing statement on January 9, 2020. The Committee's complaint, however, also alleges that "the security interest was transferred to Worldwide on *account of an antecedent debt.*" *See* ¶ 3 of the

proposed complaint attached as Ex. 1 to Motion.  Minn. Stat. § 513.43 specifically provides that securing an antecedent debt is value.  "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or *an antecedent debt is secured or satisfied . . . .*" *Id.*

Pursuant to the agreements between the Debtor and Worldwide, obligations owed to Worldwide accrue interest at the rate of 18% per annum.  Further, Worldwide is entitled to recover its attorneys' fees.  Finally, Worldwide's UCC financing statement was filed prior to the UCC filed by Second Avenue Capital Partners, LLC ("**Prepetition Agent**") and thus Worldwide is first in priority holding a significantly over-secured claim.  Allowing the Committee to pursue its fatally flawed claim will result in the accrual of additional attorneys' fees and interest (which accrues at the rate of approximately $50,000 per month), which will increase the amount of Worldwide's senior secured claim.  Additionally, the Committee, and perhaps the Debtor, will incur fees that will need to be paid.  These additional expenses as well as the attendant delay resulting from allowing the Committee to pursue its claim is neither in the best interest of the estate nor beneficial or necessary.

## I.    FACTUAL SUMMARY

### A.    Worldwide's Business and Agreements with Debtor.

1.    Worldwide is a Washington cooperative association providing its members access to purchase outdoor sporting goods inventory such as camping, fishing and recreational firearms through its vendor network.  The Debtor is a member of Worldwide.  The Debtor's and Worldwide's relationship is governed by a series of agreements and documents, including but not limited to the following:

2

a.      Security Agreement dated February 27, 2019, a true and correct copy of which is attached hereto as <u>Exhibit A</u> and as Ex. A to Ex. 1 of the Motion ("**Security Agreement**");

b.      Member Credit Agreement dated February 25, 2019, a true and correct copy of which is attached hereto as <u>Exhibit B</u> ("**Credit Agreement**"); and

c.      Worldwide Distributors Membership and Agency Agreement dated February 25, 2019, a true and correct copy of which is attached hereto as <u>Exhibit C</u> ("**Member Agreement**"); and

d.      Member Handbook, a true and correct copy of which is attached hereto as <u>Exhibit D</u> ("**Member Handbook**").

2.      The Debtor, as a cooperative member of Worldwide, was able to purchase product from Worldwide's vendor network gaining both favorable pricing and payment terms.[1]  The Debtor initiates the process by submitting a purchase order to one of Worldwide's network of vendors indicating that the purchase is to be billed to Worldwide and the inventory shipped to the Debtor ("**Worldwide Purchase Orders**").  Upon receipt of the vendor invoice related to a Worldwide Purchase Order, Worldwide affixes its own invoice number to the vendor's invoice and sends it to the Debtor ("**Worldwide Vendor Invoices**").  Worldwide then pays the vendor pursuant to the terms offered by the vendor.  The Debtor is required to pay Worldwide, and not the vendor, the amount reflected in all Worldwide Vendor Invoices.  The Debtor's obligation to

---

[1] Worldwide provided a more detailed explanation of the business relationship among the Debtor, the vendors and Worldwide in its Objection of Worldwide Distributors to Entry of Final Order on Motion for Order (I) Granting Expedited Relief and (II) Authorizing the Use of Cash Collateral on an Interim and Final Basis.  Docket # 93.  In order to minimize repetition, Worldwide will summarize the relationship in this Objection.

pay Worldwide is secured by the Debtor's personal property including accounts, inventory and equipment pursuant to the terms of the Security Agreement.

3.      The Security Agreement, the Credit Agreement and the Member Agreement were all executed in late February 2019.  On January 9, 2020, Worldwide filed a UCC Financing Statement with the Minnesota Secretary of State, a true and correct copy of which is attached hereto as Exhibit E ("**Worldwide UCC**").  The Worldwide UCC was filed approximately two months before the Prepetition Agent filed its UCC Financing Statement on March 4, 2020.

4.      Prior to January 9, 2020 and continuing after January 9, 2020, the Debtor submitted Worldwide Purchase Orders to Worldwide's network of vendors, the vendors billed Worldwide, Worldwide submitted Worldwide Vendor Invoices to the Debtor, Worldwide paid the vendors the amount then due on the Worldwide Vendor Invoices and, except for the Worldwide Vendor Invoices that comprise Worldwide's claim, the Debtor paid Worldwide the amounts due under the Worldwide Vendor Invoices.  On January 9, 2020, the outstanding Worldwide Vendor Invoices totaled $1,232,828.00.  The current outstanding balance owed to Worldwide (exclusive of any attorneys' fees and most of the accrued and unpaid interest) is $3,298,044.00.  Of that amount, $3,261,759.00 consists of unpaid Worldwide Vendor Invoices, all of which were issued after January 9, 2020 for product delivered to the Debtor after January 9, 2020.

5.      In its Motion, the Committee seeks authority to pursue two claims under the Minnesota Uniform Voidable Transfers Act (**"MUVTA"**).  The first claim is brought under Minn. Stat. § 513.45 which is described in Count I.  Count II alleges a claim under Minn. Stat. § 513.44.  In its complaint, the Committee summarizes its claim under § 513.45 as follows:

> The Committee asserts that the lien asserted by Worldwide is avoidable pursuant to 11 U.S.C. § 544 and the Minnesota Uniform Voidable Transfers Act ("MUVTA").  *See*

4

Minn. Stat. §§ 513.41 through 513.51.  Specifically, the security interest granted to Worldwide is avoidable pursuant to Minn. Stat. § 513.45 because:  *(1) the security interest was transferred to Worldwide on account of an antecedent debt*; (2) the Debtor did not receive reasonably equivalent value in return for the transfer; and (3) the Debtor was insolvent and/or the transfer of the interest to Worldwide caused the Debtor to become insolvent.

*See* ¶ 3 of proposed complaint, Ex. 1 to Motion (emphasis added).

6.     The Committee further alleges that "The Debtor, using Worldwide's services, purchased various goods and merchandise from third-party vendors and, *because of the 2019 agreements, is indebted to Worldwide for those services*."[2]  *Id.* at ¶ 21.  The complaint goes on to state that Worldwide's *"claim arose in February 2019*, when the Debtor and Defendant entered into the Credit Agreement, the Membership Agreement and the Agency Agreement . . . ."

7.     The Committee alleges that it requested consent to pursue claims against Worldwide pursuant to a letter dated March 9, 2021 and that the Debtor responded in a letter dated March 18, 2021 granting its consent.  The Debtor provided the March 18, 2021 letter.  *See* Exhibit F attached hereto.  Worldwide has also requested that the Committee provide the March 9, 2021 letter – it has not done so.

## II.   ARGUMENT

### A.   Requirements for Derivative Standing.

1.     The criteria for determining derivative standing if the debtor has consented are set forth in *In re Racing Services, Inc.*, 540 F.3d 892 (8th Cir. 2008):

A creditor[ ] ... may acquire standing to pursue the debtor's claims if (1) the [creditor] has the consent of the debtor in possession or trustee, and (2) the [bankruptcy] court finds that suit by the [creditor] is (a) in the *best interest* of the bankruptcy estate, and (b) *is*

---

[2]  The vast majority of Worldwide's claim is comprised of amounts outstanding pursuant to the Worldwide Vendor Invoices  (*i.e.*, amounts that Worldwide paid to vendors for goods delivered to the Debtor).  Fees owed to Worldwide comprise a relatively small portion of the amount due.

*necessary and beneficial* to the fair and efficient resolution of the bankruptcy proceedings.

(Emphasis added.)

The Debtor, in the March 18, 2021 letter granting consent for the Committee to pursue claims against Worldwide, also advised the Committee that it would need to satisfy the additional criteria of *Racing Services*.  As described below, the complaint, on its face, alleges that Worldwide satisfies the definition of "value" under MUVTA and, therefore, the proposed complaint, if actually filed, would be subject to a meritorious Rule 12 motion to dismiss.  Thus, pursuing the meritless claim would increase the amount owed to Worldwide and thus reduce the recovery for all creditors junior to Worldwide and would cause the estate to incur needless expenses.

>    **B.**      **Pertinent Provisions of the MUVTA**.

1.      As described above, the Committee asserts claims under both Minn. Stat. §§ 513.44 ("**MUVTA 44**") and 513.45 ("**MUVTA 45**").  While both provisions provide very similar relief, each has slightly different requirements that must be met.  Further, the class of plaintiffs entitled to relief under MUVTA 44 is broader than that under MUVTA 45.  Specifically, relief under MUVTA 44 is available to creditors whose claims arose before or after the alleged transfer occurred:

> A transfer made or obligation incurred by a debtor *is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred*, if the debtor made the transfer or incurred the obligation.

Minn. Stat. § 513.44(a) (emphasis added).

2.      On the other hand, the availability of relief under MUVTA 45 is limited to those creditors whose claims were outstanding as of the date of the transfer:

> A transfer made or obligation incurred by a debtor *is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred* if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn. Stat. § 513.45(a) (emphasis added).

The official comments to the Uniform Voidable Transfer Act ("**UVTA**") clarify this point:

> Section 4 (MUVTA 44) unlike § 5 (MUVTA 45), protects creditors of a debtor whose claims arise after as well as before the debtor made or incurred the challenged transfer or obligation.

*See* § 2 of the official comments of Section 4 of UVTA (parenthetical phrases added).

Under either MUVTA 44 or MUVTA 45, the Committee has the burden of establishing that the estate did not receive reasonably equivalent *value*. "Value" is a defined term under MUVTA:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or *an antecedent debt is secured or satisfied*, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

Minn. Stat. § 513.43(a)(emphasis added).

The Committee's complaint is premised on the allegation that the filing of the UCC financing statement was done on account of an antecedent debt and that Worldwide's claims arise from the prior 2019 agreements. The statute is very clear that value includes securing an antecedent debt. *Id.* Accordingly, by pleading the transfer was on account of an antecedent debt, the Committee is alleging that value was given for the transfer.

There is ample case law holding that a late filed UCC is not a fraudulent transfer. *See EDP Investments Co., LLC*, 2020 WL 6937351 (Bankr. C.D. Cal. 2020)*; In re Propex Inc.*, 415 B.R. 321, 332 (Bankr. E.D. Tenn. 2009). Decisions interpreting 11 U.S.C. § 548 are relevant to

the interpretation of value under MUVTA.    Both contain virtually identical definitions of "value."    Compare the definition of "value" from MUVTA to the definition of "value" under Section 548:

> "value" means property, or *satisfaction or securing of a present or antecedent debt of the debtor*, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor;

11 U.S.C. § 548(d)(2)(a) (emphasis added).

3.    The *EDP* case, however, is particularly on point.    In that case, the trustee sought to avoid a security interest where the security agreement was executed on November 8, 2007, but the UCC was not filed until September 11, 2009.    The trustee sought to avoid the lien on account of a nearly two-year delay in filing the UCC financing statement.    The court held that:    "The Financing Statement secured an antecedent debt and is therefore not avoidable as a constructively fraudulent transfer," 2020 WL 6937351 at page 21.    Further, however, the trustee sought to avoid the claim under UVTA as enacted in California.    The court held:

> The Trustee also seeks to avoid the filing of the Financing Statement as constructively fraudulent pursuant to § 544 and Cal. Civ. Code § 3439.07.    Like the Bankruptcy Code, the constructively fraudulent transfer provisions of California law define "value" as the securing of an antecedent debt.    Cal. Civ. Code § 3439.03.    The Trustee's constructively fraudulent transfer claim under California law fails for the same reason that the claim under § 548(a)(1)(B) fails.

*Id.*

If the Committee's position were the law, every creditor that receives a payment on an outstanding debt would be liable under MUVTA unless the creditor transferred assets back to the borrower at the point of payment.    The term "transfer" is not restricted to the creation of a lien, but also includes the "payment of money."    Minn. Stat. § 513.41(16).    Thus, under the Committee's theory of the case, a loan made in February 2019 that was paid on January 9, 2020 would also be a fraudulent transfer unless the borrower received something in exchange for the

payment of the debt.  In essence, the creditor can never be paid off while a borrower is insolvent without receiving a fraudulent transfer.  That, of course, would be ludicrous and is not the law.

There is no question that Worldwide's UCC was filed almost a year after the Credit Agreement, the Security Agreement and related documents were signed.  If it had occurred within 90 days of the bankruptcy filing, this would be a different matter.  The Worldwide UCC was filed a year prior to the petition date.  Accordingly, there is no path to a fraudulent transfer claim for the Committee.  Allowing the Committee to proceed will only deplete assets of the estate and inhibit the fair and efficient resolution of the case.

WHEREFORE, Worldwide requests that the court deny the Motion.


Dated:  April 8, 2021                    FOX ROTHSCHILD LLP

                                         By: */e/  Steven W. Meyer*
                                         Steven W. Meyer (#160313)

                                         222 South Ninth Street, Suite 2000
                                         Minneapolis, Minnesota 55402
                                         Telephone:  (612) 607-7000
                                         Facsimile:  (612) 607-7100


                                         ATTORNEYS FOR WORLDWIDE
                                         DISTRIBUTORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Tea Olive I, LLC d/b/a Stock+Field,

      Debtor.

Case No. 21-30037 (WJF)
(Chapter 11)

**UNSWORN CERTIFICATE
OF SERVICE**

      I hereby certify that on April 8, 2021, I caused the *Objection to Motion of the Committee for Derivative Standing to Pursue Claims Against Worldwide* to be filed electronically with the Clerk of Court through ECF.

Dated:  April 8, 2021

FOX ROTHSCHILD LLP

By: */e/  Steven W. Meyer*
    Steven W. Meyer (#160313)

222 South Ninth Street, Suite 2000
Minneapolis, Minnesota 55402
Telephone:  (612) 607-7000
Facsimile:  (612) 607-7100

ATTORNEYS FOR WORLDWIDE
DISTRIBUTORS

## <u>VERIFICATION</u>

I, Sean Maygra, President of Worldwide Distributors, declare under penalty of perjury
that the facts set forth in the foregoing Objection are true and correct according to the best of my
knowledge, information, and belief.


Dated:  April 8, 2021

_____

Sean Maygra

*EXHIBIT A*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS*
*TO MOTION OF THE COMMITTEE FOR DERIVATIVE*
*STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*

**SECURITY AGREEMENT**

## SECURITY AGREEMENT

This Security Agreement ("Agreement") is made _February 27_, 20_19_, between **Tea Olive I, LLC,** together with its permitted successors, transferees and assigns ("Debtor") and Worldwide Distributors together with its affiliates, subsidiaries, successors, transferees and assigns ("Creditor") for good and valuable consideration, receipt of which is hereby acknowledged.

1. **SECURITY INTERESTS.**

(a)    Debtor hereby grants Creditor a continuing purchase money security interest in all of Debtor's inventory and equipment financed by Creditor for the benefit of Debtor or sold or distributed to Debtor by Creditor, wherever located, now owned or hereinafter acquired and all proceeds therefrom, to secure the payment of Debtor's indebtedness to Creditor. The parties intend by this grant of purchase money security interest that each item of inventory and equipment shall secure both its own cost and any other indebtedness as permitted under Article 9 of the Uniform Commercial Code as now enacted in this jurisdiction, or in force at any relevant time.

(b)    In addition to the security interest granted in section 1(a) above. Debtor hereby grants Creditor a continuing security interest in all of the following, wherever located, now owned or hereafter acquired: all inventory (including without limitation all returns, repossessions and parts), all equipment, furniture and fixtures, all general intangibles, instruments, accounts, chattel paper, contract rights, documents, deposit accounts, investment property, letters of credit and letters of credit rights, security interests and agreements, and all cash and non-cash proceeds, products, additions and accessions to any of the foregoing in sections 1(a) and 1(b) to secure the payment and performance of all of Debtor's obligations and indebtedness to Creditor, regardless of the form of such obligations and indebtedness, arising at any time under this Agreement or otherwise, together with interest thereon and any renewals or extensions thereof, and whether such indebtedness and obligations are from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred.

(c)    The collateral described in sections 1(a) and 1(b) above is hereinafter collectively referred to as the "Collateral" and the indebtedness and obligations secured by the Collateral are hereinafter collectively referred to as the "Indebtedness."

(d)    Debtor acknowledges and agrees that, with respect to any term used herein that is defined in either Article 9 of the Uniform Commercial Code in force in the jurisdiction in which this security agreement is signed, when it is signed, or Article 9 in force at any relevant time or jurisdiction relating to the collateral, the meaning to be given with respect to any particular item of property shall be that under the more encompassing of the two definitions. The Debtor further acknowledges that this security agreement is intended to, and covers, all assets of the Debtor described in sections 1(a) and 1(b) and that Creditor may file a financing statement which so states. Debtor hereby ratifies, authorizes and authenticates any acts taken by Creditor which

- 1 -

occurred prior to the execution of this agreement for the filing of an initial financing statement, in lieu of financing statement or any other financing statement.

2.      **DEBTOR'S WARRANTIES AND REPRESENTATIONS.**

Debtor makes the following warranties and representations to Creditor:

(a)      Debtor is a LLC registered under the laws of the state of **Minnesota**, Identification Number **06879357**, is in good standing with its principal place of business located at **3435 Promenade Ave, Ste 1001, Eagan, MN 55123.**

(b)      The exact legal name of Debtor is **Tea Olive I, LLC**, Debtor uses no other names or marks, and has no other locations, unless listed on Exhibit A attached hereto.

(c)      Debtor owns the Collateral, free from all liens, security interests, or encumbrances, except as shown on Exhibit A hereto, and Debtor will defend the Collateral against all claims and demands not so shown.

(d)      The security interest given herein shall include a purchase money priority security interest.

3.      **DEBTOR'S COVENANTS.**

Debtor covenants and agrees with Creditor as follows:

(a)      Debtor shall notify Creditor immediately in writing if Debtor: (i) changes or adds a name or mark to its business; (ii) changes in any respect the form under which its business is operated; (iii) changes or adds a business location; or (iv) changes its state of incorporation or registration, or if Debtor is a sole proprietor, Debtor changes his/her principal residence. If Debtor is a sole proprietor, Debtor's principal residence is: __N/A__

(b)      Debtor shall keep its books and records for the Collateral at its principal place of business, and will keep the Collateral only at locations identified in this Agreement or in Exhibit A. Debtor shall not move such books and records, or the Collateral, without written consent, except for Collateral sold in the ordinary course of Debtor's business.

(c)      Debtor shall keep the Collateral free of unpaid charges, liens, security interests, and encumbrances (except those listed in Exhibit A or granted to Creditor) and shall pay when due all taxes and assessments with respect to the Collateral or its use or operation.

(d)      Creditor shall have the right to inspect and make an inventory of the Collateral, and to examine Debtor's books and records concerning the Collateral at all reasonable times and wherever located.

2

(e)      Debtor shall obtain and maintain coverage insuring the Collateral against fire, theft, and extended coverage risks ordinarily included in similar policies, all subject to Creditor's approval, with proceeds payable to Debtor and to Creditor as their interests may appear. All policies shall require at least fifteen (15) calendar days' written notice to Creditor before any material change or cancellation. Debtor shall give Creditor a certificate or a copy of each such policy within thirty (30) calendar days after the date of this Agreement.

(f)      Debtor shall notify Creditor within five calendar days if Debtor becomes involved in any new claim or dispute, or in any litigation or other proceeding before any court, tribunal, or similar body, in which any potential recovery from Debtor may exceed $10,000.

(g)      Debtor shall not merge, consolidate, or acquire all or substantially all of the assets of any other person or entity without written notice to Creditor.

(h)      Within then (10) calendar days after any written request from Creditor, Debtor shall give Creditor (i) a detailed report in form acceptable to Creditor, of the Collateral on hand, or (ii) a current financial statement of Debtor, or both, as Creditor may request.

(i)      Debtor and Creditor agree that all payments received by Creditor for payment of any of the Indebtedness shall be applied to the oldest portion of the Indebtedness, whether evidenced by invoices or otherwise, unless otherwise applied by Creditor.

(j)      Debtor shall defend, indemnify and hold harmless Creditor and its affiliates, subsidiaries, officers, directors, employees and agents ("Seller's Indemnitees") from any costs, expenses (including attorney's fees), losses, damages or liability incurred because of Creditor's extension of credit to or on behalf of Debtor, Debtor's default to Creditor under this Security Agreement or any other agreement between Creditor and Debtor, Debtor's failure to pay any amount due Creditor now or hereafter owing, or any actual or alleged infringement of any patent, copyright, trade secret, trademark, maskwork or other proprietary right arising out of the use or sale of inventory or equipment or other goods or software by Creditor, Debtor or use by Debtor's customers.

4.    **DEBTOR DEFAULT.**

Any of the following shall be an event of Debtor default under this Agreement:

(a)      Failure of Debtor to pay any Indebtedness when due.

(b)      Failure of Debtor to perform any obligation under this Agreement and/or any other agreement with or in favor of Creditor.

(c)      Making false statements to Creditor, or withholding any information with the intent to deceive Creditor.

(d)      Loss, theft, damage or destruction, levy, seizure, or attachment of any of the Collateral, unless such Collateral is either (i) fully covered by insurance, or (ii) replaced as

3

Collateral by property of equal or greater value, or unless (iii) any such levy, seizure, or attachment is released or dissolved within three days after it is made.

(e)    A change in the financial or other condition of Debtor or the Collateral such that in Creditor's opinion Creditor's risks are increased or the value or security of the Collateral is impaired.

(f)    Debtor's dissolution or termination of existence, or insolvency of Debtor; or Debtor's inability to pay its debts as they mature; or the appointment of a receiver of any property of Debtor; or Debtor's filing of a voluntary petition in bankruptcy; or the adjudication of Debtor as a bankrupt; or any transfer, without prior written consent by Creditor, of a substantial part of Debtor's property.

5.    **CREDITOR'S REMEDIES.**

Upon any Debtor default, Creditor at its option and without demand or notice to Debtor, may have any one or more of the following remedies, plus other remedies available under applicable law:

(a)    Declare all Indebtedness due and payable, with interest thereon, from the date of default until paid.,

(b)    Take possession of the Collateral wherever located; and Debtor hereby authorizes Creditor to enter upon Debtor's premises and remove the Collateral.  Upon Creditor's request, Debtor shall assemble the Collateral and make it available to Creditor at any place designated by Creditor which is reasonably convenient to both parties.

(c)    Sell or otherwise dispose of the Collateral at public or private, sale, whether or not Collateral is present at the sale, on such terms and in such manner as Creditor may determine in compliance with the applicable Uniform Commercial Code (hereinafter referred to as the Code) and Debtor expressly agrees that reasonable notice of the time and place of the sale shall be ten (10) calendar days. Creditor may purchase at any such sale and may exercise any and all remedies it may have under the Code, and shall have the absolute right to apply proceeds of the sale against the Indebtedness or any part thereof, as and in such order as Creditor may direct.

(d)    Make demand for, and Debtor promptly shall deliver to Creditor, in kind, the proceeds of any sale or other disposition of Collateral; and Creditor shall have the right to notify any or all account Debtors of Debtor of Creditor's security interest, and to require remittance directly to Creditor of all sums due Debtor, and Debtor hereby authorizes Creditor, in its sole and absolute discretion, to compromise and settle any claims of the Debtor against third persons in a commercially reasonable manner, and to endorse Debtor's name on any instruments received in payment of an account.

(e)    If a default hereunder also is a default under any other agreement between Debtor and Creditor, then Creditor shall have the right to pursue its remedies under such agreement and under this Agreement, successively or concurrently, or otherwise as Creditor may determine, and

Creditor shall not thereby be stopped or prevented from pursuing any other remedy it may have under such agreement, or under this Agreement, or by law.

(f)    Make demand for, and Debtor promptly shall pay to Creditor any deficiency if proceeds of any sale or other disposition of Collateral are insufficient to satisfy the Indebtedness; and, in addition, Debtor shall reimburse Creditor upon demand for all costs and expenses incurred by Creditor in retaking, holding, and preparing the Collateral for disposition, and in the sale or other disposition, and for all attorneys' fees, legal costs and expenses, and collection fees incurred by Creditor in the exercise of its rights and remedies under this Agreement and in the collection of Indebtedness regardless of whether or not formal legal action is commenced. All such costs and expenses also shall be Indebtedness, secured under this Agreement.

(g)    The rights conferred on the Creditor hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such rights. All the rights, privileges, powers and remedies of Creditor are cumulative. Creditor has no obligation to attempt to satisfy the Obligations by collecting them from any other person liable for them and Creditor may release, modify or waive any collateral provided by any other person to secure any of the Obligations, all without affecting Creditor's rights against Debtor. No delay or omission by Creditor to exercise any right or remedy accruing upon any Event of Default will (a) impair any right or remedy, (b) waive any Event of Default or operate as an acquiescence to the Event of Default, or (c) affect any subsequent Event of Default of the same or of a different nature

6.    **GENERAL.**

(a)    Debtor hereby authorizes Creditor to prepare and/or file and/or add additional information as it becomes available, or otherwise transmit any and all records, including but not limited to writings or other written documents, if applicable, which Creditor in its sole discretion shall deem necessary to create and perfect a security interest consistent with this Security Agreement or with any future grant of a security interest authenticated by Debtor, (such authentication can be by any medium, written or unwritten, including but not limited to telephone, electronic transmission or a writing) including but not limited to a security agreement, initial financing statement, financing statement, in lieu of financing statement, amendments and continuation statements, by any means authorized by law, whether such law is currently in effect or becomes effective after the execution hereof, including electronic filing. Debtor understands and agrees that by executing this agreement, Debtor has hereby authenticated (as that term is defined in the applicable commercial code) this agreement as a record and authorizes Creditor to (1) prepare and file such record(s) without the signature of Debtor, (2) file such writing bearing any general, generic or supergeneric description of the collateral authorized by the applicable code and (3) file any future records which shall hereby be deemed authenticated (as defined in the applicable commercial code) by Debtor.

(b)    All notices shall be in writing shall sent by facsimile transmission, hand delivered, mailed by certified mail, return receipt requested or sent by recognized overnight courier service, to the other party at the following addresses:

To Creditor:   Worldwide Distributors
8211 South 194th
Kent, Washington 98032
Attention: Credit Department

To Debtor:   **Tea Olive I, LLC**
**3435 Promenade Ave, Ste 1001**
**Eagan, MN 55123**

or other address given by notice, and shall be effective when delivered personally or as shown on any receipt or facsimile confirmation, and if sent by multiple means, when first received.

(c)      This Agreement shall inure to the benefit of and shall bind each of the parties and their respective heirs, representatives, successors, and assigns; but Debtor shall not assign any interest or obligation herein without prior written consent of Creditor.

(d)      No waiver or modification by Creditor of any of the terms or conditions of this Security Agreement will be effective unless in writing and signed by Creditor. Failure by Creditor to enforce any provision of this Agreement will not be deemed a waiver of future enforcement of that or any other provision. Debtor waives any failure of Secured Party to take, perfect or keep perfected any security interest.

(e)      If any provision hereof is held to be invalid, the other provisions shall remain enforceable unless deletion of the invalid material will defeat the essential purposes of the parties as expressed herein.

(f)      This Agreement and all transactions contemplated herein or resulting herefrom shall be governed by and construed in accordance with Washington State law.

(g)      All disputes arising out of or in connection with this Agreement, including the determination of the scope or applicability of this agreement to arbitrate, shall, be referred to and finally resolved by arbitration in Seattle, Washington by an single arbitrator agreed to by the parties, or if the parties cannot agree, by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction, provide however, this shall not preclude Worldwide from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including, but not limited to, preliminary injunction, attachment, replevin or the appointment of a receiver in connection with the enforcement of this Agreement. Notwithstanding the foregoing, nothing in this section shall prevent Worldwide from commencing a civil proceeding in a court of competent jurisdiction to judicially enforce Worldwide's rights against the Collateral. If Worldwide commences a civil action to enforce its security agreement, then any issue other than the enforceability of Worldwide's security interest and its right to possess or sell the collateral, such as any dispute as to the balance owing Worldwide or any counterclaims or affirmative defenses asserted by the Member, shall be determined by arbitration as provided for in this Section.

6

(h)     The terms of this Agreement are intended by the parties as the complete, final and exclusive statement of their agreement as to the matters described herein, and may not be contradicted by evidence of any prior or contemporaneous oral or written agreement.

(i)     If two or more parties are referred to herein as Debtor, they shall be jointly and severally liable under this Agreement, and the liability of each shall not be affected as to a party by the termination or release of any party or security of or from any other party.

Executed as of the date first given above.

CREDITOR: Worldwide Distributors

By: _____

Title: _Credit Manager_

DEBTOR: **Tea Olive I, LLC**

By: _____

Title: _CEO_

7

EXHIBIT "A"

Security Agreement dated ___Feb. 24_____, 20_19_

Debtor:    **Tea Olive I, LLC**

All Debtor Trade Names or Marks:

1.    ___Big R Stores_____

2.    _____

3.    _____

4.    _____

All Other Debtor Locations including Stores and Warehouses not Receiving Shipments:

1.    ___All 23 Big R Stores + 3 warehouses___

2.    _____

3.    _____

4.    _____

5.    _____

6.    _____

7.    _____

8.    _____

9.    _____

10.   _____

Liens, Security Interests, or Encumbrances on Collateral:

1.    ___None_____

2.    _____

3.    _____

Note:  If none, write "NONE." Attach additional sheets if necessary.

8

*EXHIBIT B*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS
TO MOTION OF THE COMMITTEE FOR DERIVATIVE
STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*

**CREDIT AGREEMENT**

## MEMBER CREDIT AGREEMENT

The undersigned member ("**Member**") and Worldwide Distributors, a Washington cooperative association ("**Worldwide**") make this Credit Agreement as of this ___ day of _____, 20___.

WHEREAS, Worldwide is a cooperative association which acts as an agent for its members in purchasing inventory for its members; and WHEREAS, Worldwide provides additional services to its members including accounting and computer services; and WHEREAS, the undersigned has been accepted as a member or prospective member of Worldwide.

NOW, THEREFORE, it is hereby agreed as follows:

1.      <u>Services: Payment</u>.   Worldwide will provide to the Member all the services that Worldwide furnishes; and the undersigned agrees to pay Worldwide for the services rendered to the undersigned at the published rates applicable to the membership.

2.      <u>Payment Due on Invoice Due Date</u>.   The undersigned agrees to pay for all purchases made through Worldwide and billed to Worldwide on such terms and conditions set forth in the Worldwide Member Handbook.   Such payment is due in the offices of Worldwide on the due date.  If payment is late, it will be subject to the Delinquency Charge discussed below.

3.      <u>Conditions</u>.   To secure prompt payment, the undersigned agrees to the following:

        a.      To submit to Worldwide a current financial statement at the end of each fiscal year-end or such interim statements as Worldwide may request, certified by the undersigned or an officer of the undersigned; and

        b.      To grant to Worldwide a security interest in assets of the undersigned as may be agreed to with Worldwide, but in no event will "inventory and proceeds" not be covered by such agreement

4.      <u>Representations and Warranties as to Financial Statements and Financial Condition</u>.   As a condition of Worldwide providing Member with a credit limit for purchases of merchandise, Member represents and warrants to Worldwide that:

        a.      All financial statement(s) it has, or in the future will provide Worldwide, were or will be prepared in substantial compliance with generally accepted accounting principles.

        b.      The financial statements member has provided and will provide are being relied upon by Worldwide in their continued extension of credit, and such credit would not be granted or extended without the representations contained herein and in said financial statements; and

        c.      If there is any material change in the Debtor's financial condition that may have an adverse impact on Worldwide's ability to collect the amounts due to it from Member, Member will inform that Worldwide in writing of such change within 5 business days.

5.      <u>Delinquency Charge</u>.   Whereas Worldwide is not in the lending business and it is incapable of sustaining late accounts receivable from its members, all payments for goods or services furnished must be submitted by members no later than the due date shown on the invoice from Worldwide.  If the undersigned fails to promptly pay its bill within the aforementioned time period, it is a breach of this contract and the undersigned will be liable for a delinquency charge constituting liquidated damages in the amount of one and one half (1.5%) of the account balance.

6.    Cancellation for Noncompliance.  In the event the undersigned does not comply with the terms of credit due Worldwide or to suppliers of the undersigned using Worldwide's credit, all privileges of the undersigned shall cease at the sole option of Worldwide and shall not be restored unless, in the opinion of Worldwide's officers, the undersigned's credit has been satisfactorily re-established.

7.    Remedies: Attorneys' Fees.  In the event that the undersigned breaches any of the terms of this agreement or the security agreements or any other documents signed between the parties, Worldwide shall have all rights set forth in this agreement and in all other documents which may be executed by and between the undersigned and Worldwide.  In the event it is necessary for Worldwide to retain legal counsel to obtain compliance with the duties contained in any of these agreements or the sums owing to Worldwide, regardless of whether a lawsuit or arbitration is commenced, the undersigned agrees to pay to Worldwide the attorney's fees and costs incurred by Worldwide in enforcing its rights and remedies under this and the other agreements signed between Worldwide and the undersigned.

8.    Governing Law and Disputes.  All disputes arising out of or in connection with this Agreement or any security agreement executed by Member, including the determination of the scope or applicability of this agreement to arbitrate, shall, be referred to and finally resolved by arbitration in Seattle, Washington by an single arbitrator agreed to by the parties, or if the parties cannot agree, by JAMS pursuant to its Streamlined Arbitration Rules and Procedures.  Judgment on the Award may be entered in any court having jurisdiction, provide however, this shall not preclude Worldwide from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including, but not limited to, preliminary injunction, attachment, replevin or the appointment of a receiver in connection with the enforcement of this Agreement.   Notwithstanding the foregoing, nothing in this section shall prevent Worldwide from commencing a civil proceeding in a court of competent jurisdiction to judicially enforce Worldwide's rights against the Collateral.  If Worldwide commences a civil action to enforce its security agreement, then any issue other than the enforceability of Worldwide's security interest and its right to possess or sell the collateral, such as any dispute as to the balance owing Worldwide or any counterclaims or affirmative defenses asserted by the Member, shall be determined by arbitration as provided for in this Section.

9.    Waiver.  Failure by Worldwide to strictly enforce any provision of this Agreement will not be deemed a waiver of future enforcement of that or any other provision.

10.   Personal Guaranty.  As a further condition of the extension of credit, the undersigned agrees that the major shareholders or members of the undersigned may be required to sign, with their spouses, a guaranty of payment guaranteeing the payment of the undersigned.  In the event any major shareholder, members, or their respective spouses refuses to sign or terminates their guaranty of payment, Worldwide shall have the option of refusing to extend credit or services to the undersigned.

11.   Credit Limit.  Worldwide will grant a maximum credit limit of **$600,000.00**  The maximum Credit Limit shall be subject to review at any time.  Should your unpaid balance exceed this credit limit, you will be required to make a payment on your account prior to the due date unless prior arrangements have been made.  Worldwide reserves the right to discontinue "charge" shipments if the account exceeds the credit limit or if the account becomes past due.   Member agrees to take full responsibility for all purchases made from Worldwide prior to this limit being established.

12.   Binding Effect.  This agreement is binding upon and shall inure to the benefit of the heirs, executors, administrators and assigns of the parties hereto.


SIGNATURES ON FOLLOWING PAGE

## MEMBER CREDIT AGREEMENT

WORLDWIDE

By:

Print Name: Liz Summars

Title: Credit Manager

Member #          311

Exact Legal Name:    Tea Olive I, LLC

By:

Print Name:    MATTHEW  F.  WHEBBE

Title:    CEO

- 3 -

*EXHIBIT C*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS*
*TO MOTION OF THE COMMITTEE FOR DERIVATIVE*
*STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*


**MEMBER AGREEMENT**

## WORLDWIDE DISTRIBUTORS MEMBERSHIP AND AGENCY AGREEMENT

THIS MEMBERSHIP AGREEMENT ("*Agreement*") is entered into this ⟨25⟩ day of ⟨February⟩, 20 19, by and between Worldwide Distributors ("*Worldwide*"), a Washington cooperative association, and the undersigned member ("*Member*").

### Recitals

A.  Worldwide is an independent retailer buying association. Worldwide has been formed to provide, on a cooperative basis, favorable buying opportunities for merchandise and services, a forum in which merchandise and services may be presented, and market information and education.

B.  Member is a retail store or seller of consumer goods.

C.  Worldwide has invited Member to join Worldwide, and Member desires to join Worldwide.

### Agreement

**THEREFORE** in consideration of the foregoing and the following terms, conditions, and mutual promises contained in this Agreement, Worldwide and Member agree as follows:

I.  **Duties of Member**. Member agrees to:

    A.  Comply with all obligations contained in this Agreement, Worldwide's Articles of Incorporation, Bylaws and any policies Worldwide may from time to time adopt by vote of the Board of Directors;

    B.  Pay all amounts described in Section III below; and

    C.  Provide annual financial statements to Worldwide.

    D.  Shall abide by all Worldwide policies & procedures.

II.  **Term**. This Agreement shall run until either party terminates it in accordance with the provisions of this Agreement.

III.  **Payment**. Member agrees as follows:

    A.  To pay an Initial Membership Fee (in United States dollars) of $5,000, in cash or by promissory note.

    B.  To pay monthly dues and charges as they may be established from time to time by the Board of Directors of Worldwide, by the 5th day of each month. Worldwide may prospectively revise any of its dues and charges at any time. The monthly dues and charges are currently set at the following rates, calculated in accordance with the policies of Worldwide:

        1.  Monthly Membership Dues:

            a)  $410.00 monthly

            b)  $50 for each ship-to address in addition to the primary ship-to address, not to exceed $150.

        2.  Drop Ship Charges not to exceed:

            a)  1.5% for annual cumulative purchases of 0-$1,300,000.

- 1 -

b)  0.25% for annual cumulative purchases of $1,300,000 to $15,000,000.

c)  0% for annual cumulative purchases over $15,000,000.

3.  For domestic goods purchased through Worldwide Distribution Center: (a) a minimum 6% Upcharge for merchandise and freight is included on the invoice; and (b) charges for repacks and special promotions shall be additional.

4.  For imports: (a) a minimum 10% Upcharge for merchandise is included on the invoice; and (b) charges for repacks and special promotions shall be additional.

5.  Finance Charges in the amount of 1.5% per month shall be added to a member's account should an invoice(s) become past due.

6.  Applicable charges for small items such as postage, United Postal Service fees, Worldwide advertising, warehouse services and special accommodations.

7.  Credit Insurance is required for first three years of membership and each subsequent year, thereafter, as determined by Worldwide. Billings of Credit Insurance will be based on the quarterly rolling average of receivables.

C.  To provide Worldwide with security for Member's obligations to Worldwide, in the form of security interests in assets, letters of credit and/ or personal guarantees in each case satisfactory to Worldwide.

D.  To maintain the highest standard of ethics in its dealings with Worldwide and other members and patrons of Worldwide.

IV.  **Membership Interests.**  Upon execution of this Agreement and payment of the Initial Membership Fee, Member shall be entitled to one Class A Membership Interest as defined by the Articles of Incorporation of Worldwide.

V.  **Distributions Based upon Patronage.**  Member shall be entitled to distributions of cash, book credits or Class C Membership Interests in proportion to the volume of business the Member transacts with Worldwide, in accordance with the Articles, Bylaws and policies of Worldwide.

VI.  **Termination.**  Either party may terminate the Agreement at any time upon written notice to the other party, effective 30 days after the notice is sent. In addition, in the event that Member ceases to pay the Monthly Membership Dues or otherwise fails to observe its obligations under the Agreement, Worldwide may terminate the Agreement by written notice to Member.

VII.  **Refund of Initial Membership Fee.**  Upon termination of this Agreement, Worldwide shall redeem the Class A Membership Interest by paying to the former member an amount equal to the Refund Value as defined in the Articles of Incorporation, payment for which may be made in such amounts and at such times as Worldwide determines in its sole discretion over not more than a three (3) year period, with interest on the diminishing principal balance computed at the prime rate published in the Wall Street Journal. In addition, if the Member upon termination holds any Class B or Class C Membership Interests as defined in the Articles of Incorporation, Worldwide shall pay an amount equal to the Refund Value as defined in the Articles of Incorporation per Membership Interest, payment for which shall be made in such amounts and at such times as Worldwide determines in its sole discretion over a three (3) year period, with interest on the

- 2 -

diminishing principal balance computed at the prime rate published in the Wall Street Journal.

VIII.   **Offset Rights.**  Worldwide may offset against any obligations to a Member at any time the amount of any obligation then owing to Worldwide by a Member.

IX.   **Membership Not Transferable.**   The rights of the Member under this Agreement are not transferable to any other party.

X.   **Nature of Relationship.**  Worldwide is the agent of the Member on terms and conditions as stated below.  Otherwise, in the performance of this Agreement, each party shall be deemed to be an independent entity and not an agent of or a member of a joint venture with the other, and neither party may create any obligation or responsibility—expressed or implied—on behalf of or in the name of the other.  Neither party will make any false or misleading statements, claims, or representations with respect to the other.

One of the main services provided to its members by Worldwide is promotion of opportunities for each Member to obtain goods at discount or other favorable terms, all as arranged by Worldwide, and therefore, it is hereby agreed that:

A.   Member will abide by all terms and conditions related to transactions arranged for Member by Worldwide.

B.   As between Member and Worldwide, Member will be solely responsible for payment of goods that Member purchases through Worldwide from vendors and suppliers.

C.   Worldwide shall negotiate terms and furnish information respecting the purchase of goods from suppliers or vendors, including but not limited to trade discount, delivery date, availability, promotional displays for Member, and other like services, for which Member shall compensate Worldwide in accordance with the schedule of charges in effect from time to time.

D.   Worldwide agrees to furnish suitable forms of documents such as purchase orders, invoices, and remittance instructions, and Member agrees to employ such forms with respect to goods obtained through Worldwide's agency.

XI.   Ownership.

A.   <u>Member</u>.  Member shall be deemed the sole and rightful owner of all rights, title, and interest to present and future copyrights, trademarks, service marks, and patents developed by or for the Member relating to its business.

B.   <u>Worldwide</u>.  Worldwide shall be deemed the sole and rightful owner of all rights, title, and interest to present and future copyrights, trademarks, service marks, and patents developed by or for Worldwide relating to Worldwide's business.

XII.   **Representations.**  Worldwide represents to Member and Member represents to Worldwide that they have the authority to enter into this agreement.

XIII.   **Confidentiality.**  One of the benefits of membership in Worldwide is the participation in special pricing programs offered by Worldwide or to Worldwide by third parties such as vendors or suppliers.  Member shall not disclose to any third parties any information regarding any pricing programs associated with Worldwide, or the financial condition, business practices, or operations of Worldwide without the prior written consent of

- 3 -

Worldwide.  Such information is proprietary and the only purpose for which it may be used is to decide whether to participate in the programs of Worldwide.

XIV.   **Notices.**  Any notice required to be given or otherwise given pursuant to this Agreement shall be in writing and shall be hand delivered, sent by facsimile transmission, mailed by certified mail (return receipt requested), or sent by recognized overnight courier service as follows:

If to Worldwide:                    Worldwide Distributors
                                    P.O. Box 88607
                                    Seattle, Washington 98138-0607

If to Member:                       Tea Olive I, LLC
                                    3435 Promenade Ave Ste 1001
                                    Eagan, MN 55123

Notice shall be deemed given when received, and if sent by multiple means, when first received.

XV.    **Governing Law and Disputes.**

    A.    Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Washington.  In any action to enforce this Agreement or any credit or security agreement entered into in connection therewith, the prevailing party shall be entitled to its reasonable attorneys' fees and costs,

    B.    Arbitration.  All disputes arising out of or in connection with this Agreement or any agreement executed by Member and Worldwide, including the determination of the scope or applicability of this agreement to arbitrate, shall be referred to and finally resolved by arbitration in Seattle, Washington by an single arbitrator agreed to by the parties, or if the parties cannot agree, by JAMS pursuant to its Streamlined Arbitration Rules and Procedures.  Judgment on the Award may be entered in any court having jurisdiction.   This clause shall not preclude Worldwide from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including, but not limited to, preliminary injuction, attachment, replevin or the appointment of a reciever in connection with the enforcement of this Agreement or any credit or security agreement executed by the parties.

    C.    Enforcement of Security Interest.   Nothing in this Section XV shall prevent Worldwide from commencing a civil proceeding in a court of competent jurisdiction to judically enforce any security agreement granted by the Member in connection with this Agreement.  If Worldwide commences a civil action to enforce its security agreement, then any issue other than the enforceability of Worldwide's security interest and its right to possess or sell the collateral, such as any dispute as to the balance owing Worldwide or any counterclaims or affirmative defenses asserted by the Member, shall be determined by arbitration as provided in subparagraph B of this Section XV.

XVI.   **Assignment.**   This Agreement, and any rights or obligations hereunder, may not be assigned or transferred by Member without prior written approval of Worldwide, which in its sole discretion may withhold or condition such approval.

- 4 -

XVII.   **Construction.** If for any reason any provision of this Agreement, or portion thereof, is determined to be unenforceable, that provision of the Agreement will be enforced to the maximum extent permissible so as to effect the intent of the parties, and the remainder of this Agreement will continue in full force and effect.

XVIII   **Waiver.** Failure by either party to enforce any provision of this Agreement will not be deemed a waiver of future enforcement of that or any other provision.

XIX.   **Entire Agreement.** This Agreement does not constitute an offer by Worldwide and it shall not be effective until signed by both parties. This Agreement, Worldwide's Articles of Incorporation and Bylaws, and any other written agreement entered into in connection with this Agreement contains the entire Agreement of the parties and supersedes all prior written or oral discussions. This Agreement shall not be modified except by a written agreement dated on or after the date of this Agreement and signed on behalf of Worldwide and Member by their respective duly authorized representatives.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have set their hands and seals on the date first written above.

WORLDWIDE

Signature:

Print Name: 212 Summers

Title: Credit Manager

Date: 2|25|19

Member #          311

Exact Legal Name:  Tea Olive I, LLC

Signature:

Print Name:  Matthew Whebbe

Title:  CEO

Date:  2/25/19

Fed Tax ID#:
Or SS#

- 6 -

*EXHIBIT D*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS*
*TO MOTION OF THE COMMITTEE FOR DERIVATIVE*
*STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*

**MEMBER HANDBOOK**

# MEMBER HANDBOOK

# WELCOME TO WORLDWIDE

The purpose of the Member Handbook is to familiarize Members and Prospective Members with the various procedures Worldwide uses to process orders, invoices, payments, co-op and other member-driven transactions.   As procedures, forms or services change or are enhanced, Worldwide will issue periodic updates.

The handbook is divided into eight sections. The first section is an overview of the most frequent transactions that members will encounter. This is follwed by in-depth sections that allow members to gain a more thorough understanding of Worldwide's policies and procedures.

We strongly encourange you to take the time to read through the handbook at least once. Some of the procedures may be different than what you are currently using in your business or with your vendors.  The Worldwide staff is available to answer any questions you may have about products or services mentioned in this handbook. We look forward to assisting you with your merchandising, advertising, accounting and shipping needs.

All Members may view this manual on the Worldwide website at www.wdi-wdi.com. It is found under the Member Login page. If you need a password for access to the "Members Only" page please call our Information Technology (IT) department. The "Members Only" section also gives you access to additional services that Worldwide provides the Members.

As a final note to the handbook, it is important to remember that Worldwide has no independent responsibility to pay the vendor. Even when Worldwide pays the Vendor for merchandise ordered by you, such payment by Worldwide shall be deemed an advance by Worldwide on behalf of and in its capacity as a paying agent for you, the Member.

Please contact us if you have any questions about this handbook or about Worldwide. We are here to assist your success in retail.



OCTOBER 2014

# MEMBER HANDBOOK

# TABLE OF CONTENTS

**PURCHASING**
Purchasing through Worldwide..................................................................3-8
Sample Order Forms.................................................................................9-10
Sample Order Acknowledgement............................................................ 11
Sample Packing List.................................................................................. 12
Sample Purchase Order Forms................................................................13-16
Sample of Inventory For Sale................................................................... 17

**INVOICING**
Dropship Invoices......................................................................................18-22
Class C/I and Other Invoices...................................................................23-24
Sample LaserVault Screens......................................................................25-27
Invoice Email Alert.................................................................................... 28

**CREDITS, CLAIMS & DISCREPANCIES**
Dropship Claims........................................................................................ 30
Class C/I Claims......................................................................................... 31
Vendor Rebates......................................................................................... 31
Freight Claim Procedures......................................................................... 32
Sample Claim Form................................................................................... 33

**CO-OP ADVERTISING**
Co-op Claim Procedures.........................................................................34-38

**WORLDWIDE DUES & FEES**
Schedule of Worldwide Charges............................................................39-40

**STAFF REFERENCE GUIDE**................................................................... 41

**GLOSSARY OF TERMS**.......................................................................... 42



OCTOBER 2014

# MEMBER HANDBOOK

# PURCHASING

Dropship
Class C: Domestic
Class I:   Import



# MEMBER HANDBOOK

## PURCHASING THROUGH WORLDWIDE

As a Member of Worldwide you receive advantageous buying opportunities by purchasing and billing through the cooperative. Lower costs negotiated by our specialized buyers, centralized billing and extended payment terms are some of the many benefits of ordering through us. In addition, Worldwide can often negotiate special discounts and lower freight costs. All orders placed under the Worldwide programs and prices must be billed directly through Worldwide on the vendor invoices. The following list describes the different ways to order merchandise through Worldwide:

- **Worldwide Purchase Orders** – Goods are purchased using either "B" or "BG" preprinted or electronic Worldwide purchase order forms. "B" purchase orders are used by Members and "BG" purchase orders by both Prospective Members and Members with credit restrictions.

- **Member Purchase Orders** – Goods purchased using your own purchase order form. The vendor invoice must show Worldwide as the bill-to-party and the Member as the ship-to-party.

- **Worldwide Order Form (WWOF)** – Goods are purchased on a special order form that has specific vendor products purchased through Worldwide.

- **Verbal Orders** - Verbal commitments for goods purchased at a tradeshow or meeting. This is usually done at a Worldwide Hot Show or in a Worldwide meeting.

- **Electronic Device** - Goods purchased at a tradeshow or meeting using an electronic device. This is usually at a Worldwide Hot Show or in a Worldwide meeting.

The following merchandise classes define how merchandise is shipped to the Members.

- **Dropship** - Purchases shipped directly from the vendor to the Member's location.

- **Class C** – Domestic purchases shipped from the vendor to the Worldwide distribution center and then to the Member's location.

- **Class I** – Import purchases shipped from an international source to the Worldwide distribution center and then to the Member's location.

**Order Acknowledgements:**
An order acknowledgement form is sent or emailed to the Member when Worldwide generates an order and places it with the vendor (see sample on page 11).  Order acknowledgements are sent on WWOFs, electronic orders and verbal orders. Members are responsible for immediately checking their order acknowledgment for accuracy. If there are any discrepancies or questions about an order, Members should contact the appropriate category buyer. You will not receive an acknowledgement from Worldwide if you write your order on a Worldwide "B" or "BG" purchase order or your own purchase order. If Worldwide is unable to place an order, Members will receive a cancellation notice instead of an order acknowledgement.

**All Worldwide prices and programs are considered confidential information and should not be openly discussed with vendors or nonmembers. Failure to comply with confidential requirements could result in loss of programs and termination of membership.**



OCTOBER 2014

# MEMBER HANDBOOK

# DROPSHIP PURCHASES

With Dropship ordering, the goods are shipped directly to a Member's store, with the vendor invoices sent directly to Worldwide.  (See invoicing section on page 19 in this handbook for more specific details on how Dropship purchases are billed to Members.)

When placing the dropship order directly with the vendor on a purchase order, Members , Prospective Members and Members with credit restrictions use different procedures.  For all other orders, everyone uses the same procedure.

**- Members Ordering by Purchase Order:**  Dropship orders can be written on a Worldwide Purchase Order or your own Purchase Order. Preprinted and electronic order forms are available through the Worldwide Credit Department. Send the white original of the Worldwide purchase order directly to the vendor or local representative. Please make sure all pertinent information is filled out (Member ship-to address, shipping instructions, requested ship date, cancel date, selected merchandise ordered, prices, discount and/or dating terms, freight terms and order total) (see sample on page 13). Worldwide does not send an order acknowledgement but one may come from the vendor.

**- Prospective Members and Members with Credit Restrictions Ordering by Purchase Order:** Dropship orders written by a Prospective Member or Member with credit restrictions must be written on a special BG Purchase Order (see sample on page 14). All preprinted PO copies except the green copy need to be mailed or faxed (253)395-8725 to Worldwide for approval. The electronic PO can be emailed to BG@ wdi-wdi.com. The green copy is the Member Copy.  Once approved, Worldwide will place the Member order with the vendor or local representative. If Worldwide is unable to place the order, the Worldwide Credit Department will notify the Prospective Member or Member. Worldwide does not send an order acknowledgement, but you may get one from the vendor.

**- Ordering from a Dropship WWOF:**  Dropship Worldwide Order Forms (WWOF) may come by fax or e-mail. They are also used at the Worldwide Trade Shows.  These order forms have specific vendor product that can be purchased through Worldwide.  Simply return the WWOF stub to Worldwide by fax, mail or at the trade show. WWOF orders must be received by the response deadline indicated on the WWOF sheet. (See samples on pages 9-10).

**- Dropship WWOF Qualification:** Worldwide will check the order to see if it qualifies as a dropship per the terms specified on the WWOF.  If it does not qualify for dropship the WWOF may indicate that your order can be combined with other Member orders and have it shipped through the Worldwide Distribution Center as a Class C shipment. (See page 6 on Class C purchases.)  Members that dropship have the option of choosing ship and cancel dates. Worldwide will place Member orders with the vendors. Shortly thereafter, Members will receive an order acknowledgement from Worldwide (see samples on page 11).

**- Verbal Purchase Orders:** During the Worldwide Trade Shows and other trade shows that Worldwide attends you will have opportunities to order by committing verbally. When an item is presented, you simply hold up your Member number card and indicate the quantity. Acknowledgements for these orders will be sent to you after the show.

**- Electronic Orders:** During the Worldwide Hot Shows you may have the opportunity to order with an electronic device. Acknowledgements for these orders will be sent to you after the show.

Please remember that all Dropship prices and programs are considered confidential information and should not be openly discussed with vendors or nonmembers. **Failure to comply with confidential requirements could result in loss of programs and termination of membership.**



OCTOBER 2014

# MEMBER HANDBOOK

## CLASS C PURCHASES
### (DOMESTIC GOODS SHIPPED THROUGH THE WORLDWIDE DISTRIBUTION CENTER)

Class C ordering is used when terms, required freight quantities, vendor requirements or other factors make it financially favorable to have merchandise shipped from the vendor to the Worldwide Distribution Center.  (See invoicing section on page 23-24 in this handbook for more specific details on how Class C purchases are billed to Members.)

Shipments will include a Worldwide Packing List (see sample on page 12).  All correspondence on Class C orders must be handled through Worldwide.

**- Freight and Upcharge:**  A minimum upcharge of 6% to cover the expense of processing merchandise through the warehouse is included in the invoice unit cost. The preliminary paperwork (WWOF, order acknowledgement and packing slip) unit costs may or may not include the upcharge and freight. If these items are included in the unit cost, "INC" will be written on the paperwork. If freight is excluded from the unit cost, a separate line item is added on the invoice. Members are responsible for freight charges from Kent, WA to their ship-to location.

- **Ordering from a WWOF:**  Class C WWOF's may come in the mail, by fax or by e-mail. They are also used at the Worldwide Trade Shows.  WWOFs are order forms that have specific vendor product that can be purchased through Worldwide. Simply return the WWOF stub to Worldwide by fax, mail or at the trade show. These orders must be received by the response deadline indicated on the WWOF sheet.

After the order is placed you will receive an order acknowledgement from Worldwide.  The distinguishing characteristic about these orders is the merchandise receiving location.  The merchandise is first received at Worldwide's Distribution Center.  The goods are then redistributed to the Members as directed by their individual store orders. Class C shipments may be "take all" deals that could result in slight overshipments of product into the Worldwide Distribution Center. When this occurs Worldwide is entitled to overship purchase orders by up to 10% without calling the Member for authorization. Worldwide will not issue RA's or honor claims for these overshipments. Merchandise is then placed in Member bays for eventual shipment to stores.  Orders are shipped according to Member shipping instructions.

**- Verbal Purchase Orders:** During the Worldwide Trade Shows and other trade shows that Worldwide attends you will have opportunities to order by committing verbally. When an item is presented, you simply hold up your Member number card and indicate the quantity. Acknowledgements for these orders will be sent to you after the show.

**- Electronic Orders:** During the Worldwide Silent Hot Shows you may order with an electronic device. Acknowledgements for these orders will be sent to you after the show.

**- Cancelations:** Many Class C orders are group based contractual orders; therefore, <u>they cannot be canceled.</u>

Please remember that all Class C prices and programs are considered confidential information and should not be openly discussed with vendors or nonmembers.  **Failure to comply with confidential requirements could result in loss of programs and termination of membership.**



# MEMBER HANDBOOK

## CLASS I PURCHASES
### (IMPORTED GOODS THROUGH THE WORLDWIDE WAREHOUSE)

**Class I** purchases are goods that Worldwide has imported from an international source on behalf of the Members and shipped to Worldwide and redistributed to individual Members based on Member order instructions.

Import orders **CANNOT BE CANCELED**.  Worldwide has issued a letter of credit and must take the goods.

Shipments will include a Worldwide Packing List (see sample on page 12).

- **Freight and Upcharge:**  A minimum upcharge of 10% is added to goods that are imported by Worldwide to cover the expense of bringing goods into the country.  The cost per item includes the Worldwide upcharge and any freight charges incurred to ship goods to the Worldwide Distribution Center (unless specially noted).  Members are responsible for freight charges from Kent, Washington to their ship-to location(s).

- **Ordering from a WWOF:** Class I WWOF's may come in the mail, by fax or by e-mail.  They are also used at the Worldwide Trade Shows.  WWOF's are order forms that have specific product that will be imported by Worldwide on behalf of its Members. Simply return the WWOF stub to Worldwide by fax, mail or at the trade show. These orders must be received by the response deadline indicated on the WWOF sheet.

After the order is placed you will receive an order acknowledgement from Worldwide.  A distinguishing characteristic about these orders is the merchandise receiving location.  The merchandise is first received at Worldwide's  Distribution Center.  The goods are then redistributed to the Members as directed by their individual store orders. Merchandise is then placed in Member bays for eventual shipment to stores.  Orders are shipped according to Member shipping instructions.

Please remember that all Class I prices and programs are considered confidential information and should not be openly discussed with vendors or nonmembers.  **Failure to comply with confidential requirements could result in loss of programs and termination of membership.**



OCTOBER 2014

# MEMBER HANDBOOK

## ORDERING INVENTORY FROM
## THE WORLDWIDE WAREHOUSE

The Worldwide Distribution Center has a limited amount of inventory that is available for Members to purchase.  Worldwide publishes the available inventory on the website, where pictures are available, or on an easy order form (see sample on page 17).  Members may order from the website or may fax or mail the order form to Worldwide and quantities are filled the day following receipt.  Inventory prices include all Worldwide upcharges plus any freight that Worldwide may have incurred en route to Worldwide.  Terms are Net 30 days unless otherwise stated and ship FOB the Worldwide Distribution Center.  Members will receive an order acknowledgment once the order has been received.  All orders are placed in the Member's bay unless specified otherwise.



OCTOBER 2014

# WWOF INSTRUCTIONS

**worldwide**
PO Box 88607 - Seattle, WA 98138
Ph:(253)872-8746 • Fax:(253) 872-7603
WORLDWIDE CONTACT:
VENDOR:

ATTENTION
Worldwide Order Form # **4**   CLASS **1**   PAGE:   SHIP:   CANCEL:
SPECIAL TERMS   RESPONSE DEADLINE: **5**   BILLING TERMS
FREIGHT TERMS FROM VENDOR   VENDOR SHIPPING POINT:
MINIMUM FOR DROPSHIP **10**   CO-OP ADVERTISING PROGRAM:
CLASS C UPCHARGE: **INC**
FOR WORLDWIDE WAREHOUSE SHIPMENTS ONLY ADD TO PRICES SHOWN:
ESTIMATED FREIGHT TO WORLDWIDE: **11**

WWOF#   MEM# **9**
YOUR PO# **8**
BUYER NAME: **9**
FOR DROPSHIP ONLY **6**
SHIP: ____   CANCEL: ____
Qty Ord   UNIT   SEQ
**7**

**12**

| SEQ | ITEM DESCRIPTION | U.P.C. | STOCK# | PACK **3** | COST **2** | UNIT | Qty Ord |
|---|---|---|---|---|---|---|---|

## HOW TO ORDER FROM A WWOF

| SEQ | ITEM DESCRIPTION | |
|---|---|---|
| 1 | CLASS | A... Dropship upcharge ranges from 1/4 of 1% to 1.5% (3% for prospects).<br>C... Ship to Worldwide Distribution Center-normal upcharge 6% (up to 10% for repack)<br>L... Direct import normal upcharge 10% (included in the price quote).<br>C/A... Could be either a dropship or shipment through the Dist. Center. Check the body of the WWOF and minimum dropship box to determine what criteria will be used to route. |
| 2 | UNIT | Be careful to order by the stated unit of measure. |
| 3 | PACK | Be careful to order by or in multiples as specified. |
| 4 | WWOF NUMBER | Worldwide order number. This is our key number for tracking this order. |
| 5 | RESPONSE DEADLINE | The date this order's response must be at Worldwide. |
| 6 | DROPSHIP ONLY | If you qualify for dropship, you may specify your own individual ship & cancel dates. |
| 7 | QTY. | Fill in your quantity for dropship on both the stub and the part of the form you keep. |
| 8 | STORE P.O. # | Your P.O. # - if you include your store P.O # it will follow through on all Worldwide produced paperwork. |
| 9 | MEMBER # & BUYER | You must fill in your member number and sign the stub. |
| 10 | MINIMUM FOR DROPSHIP | Amount you must reach to qualify for your own dropship, order must also be in full case pack. |
| 11 | UPCHARGE FREIGHT ESTIMATE | If your order must route through Worldwide's warehouse (Class C)-this gives you the exact upcharge amount and an estimated freight percentage cost to get the merchandise to the Worldwide warehouse only. |
| 12 | VENDOR | Vendor name and vendor contact name-use to contact vendor concerning reorders, etc. and to track shipment. |

COMPLETE STUB, DETACH AND RETURN TO WORLDWIDE BY DEADLINE SHOWN ABOVE. ADDITIONS MUST BE SUBMITTED ON A WWOF CONTINUATION FORM.

PAGE:   DEPT:



# MEMBER HANDBOOK

## WWOF SAMPLE

(rotated order form)

**Worldwide**
PO Box 89607 • Seattle, WA 98138
Ph: (253)872-8746 • Fax: (253) 872-7603

WORLDWIDE CONTACT: **MYRON MERKEL**
VENDOR: **WORLDWIDE DISTRIBUTORS INC**
MYRON MERKEL

PHONE (253) 872-8746    FAX (253) 872-7603

ATTENTION
**OPTICS BUYER**
Worldwide Order Form # 19980  [1]
SPECIAL TERMS
**TERRA FATHER'S DAY PROMOTION**
FREIGHT TERMS FROM VENDOR
**COLLECT**
MINIMUM FOR DROPSHIP:
**N/A**

RESPONSE DEADLINE: 05/09/14
BILLING TERMS: NET 30 DAYS
VENDOR SHIPPING POINT: WOI-KENT, WA
CO-OP ADVERTISING PROGRAM:

CLASS: **C**    PAGE: 1
SHIP: 05/15/14    CANCEL: 06/15/14

MEMBR: WWOF# [1] **19980**
YOUR PO#: [3]
BUYER NAME:
WORLDWIDE DISTRIBUTORS INC
FOR DROPSHIP ONLY
SHIP:
CANCEL:

FOR WORLDWIDE WAREHOUSE SHIPMENTS ONLY ADD TO PRICES SHOWN:
CLASS C UPCHARGE: **INC**    ESTIMATED FREIGHT TO WORLDWIDE **INC**

| SEQ | ITEM DESCRIPTION | U.P.C. | STOCK # | PACK | COST | UNIT | Qty Ord | Qty Ord | UNIT | SEQ |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | TERRA BINOCULAR 10x42 BUY 12 GET 1 FREE | | 524206-9901 [2] | 1 | 300.00 | EA | | — EA | | 1 |
| 2 | TERRA BINOCULAR 8x42 BUY 12 GET 1 FREE | | 524206-9901 | 1 | 260.00 | EA | | — EA | | 2 |
| 3 | TERRA BINOCULAR 10x42 REG $300.00 | | 524206-9901 | 1 | 0.01 | EA | | — EA | | 3 |
| 4 | TERRA BINOCULAR 8x42 REG $260.00 | | 524206-9901 | 1 | 0.01 | EA | | — EA | | 4 |

### Terra Baker's Dozen Worldwide Warehouse Promotion

**ZEISS**

- THE HUNT FOR THE BEST FATHER'S DAY GIFT EVER IS OFFICIALLY OVER

- REMEMBER AT THE SHOW YOU WERE TOLD THAT WORLDWIDE COMMITED FOR ENOUGH INVENTORY TO LOCK IN 2013 PRICING?

- WELL NOW IT GETS EVEN BETTER. FOR THIS PROMOTION ONLY YOU CAN BUY 12 AND GET 1 FREE!

- ZEISS WILL ALSO PROVIDE A $50.00 CONSUMER INSTANT REBATE FROM 05/01 - 06/15!

- BAKER'S DOZEN BASED ON LAST YEAR'S PRICING AND $50.00 REBATE. WIN! WIN! WIN!

- DO NOT DELAY - LIMITED QUANTITIES AND ORDERS MUST BE PLACED THROUGH WORLDWIDE BY 05/09/14

1 WWOF #
2 VENDOR STOCK #
3 MEMBER PO#

COMPLETE STUB, DETACH AND RETURN TO WORLDWIDE BY DEADLINE SHOWN ABOVE. ADDITIONS MUST BE SUBMITTED ON A WWOF CONTINUATION FORM.

PAGE 1    DEPT 52



# MEMBER HANDBOOK

## ORDER ACKNOWLEDGEMENT



1 WWOF #
2 Vendor Stock #
3 Worldwide Order #
4 Member Purchase Order #
5 Price per Unit
6 Total cost of PO
7 Dropship  A
  Import   I
  Domestic  C



# Member Handbook

# PACKING LIST
## CLASS C AND I ORDERS

```
From: WORLDWIDE DISTRIBUTORS
      8211 S 194TH
      KENT WA 98032
      253-872-8746

                    ORIGINAL PACKING LIST              Page          1  [1]
                                                       Print  12/16/09
                                                       WWOF:       098971
                                                       PO #:       433877
                                              Canc Dt:  12/30/09
Ship FORD'S DEPARTMENT STORE
 To: 136 MAIN                                          Order    12/15/09
     HAMILTON            MT 59840                      Req Shp  12/16/09


                    NORSTAR SLEEP PRODUCTS INC

Cust              P.O. No  [5]         [4]   Order No   Ship Instructions    WH
163               B600577                    QE582/00                        1
------------------------------------------------------------------------------
Item No [3]  Description [2]         Order      Ship        B/O  U/M  Loc  Seq
------------------------------------------------------------------------------
 246619      61445              6.000       6.000        .000  EA
   RUSTIC RIDGE DOWN BLANKET, 233
   TC, 100% CTN TRIMMED, W/ SATIN
   BORDER, DOWN FILLED - WHITE
   QUEEN 18oz 90x96
   PRICE:      65.41000         392.46                                     1
 361517      FB6020            5.000       5.000        .000  EA
   FLEECE BLANKET
   ASSORT COLORS CAMEL, BURGUNDY,
   IVORY, MED BLUE & SAGE- QUEEN
   PRICE:      15.56000          77.80                                     2
                                                      * COMPLETE *
```

| | |
|---|---|
| [1] WWOF # | [4] Worldwide Order # |
| [2] Vendor Stock # | [5] Member Purchase Order # |
| [3] Worldwide Item # | |



# MEMBER HANDBOOK

# B PURCHASE ORDER SAMPLE



# Member Handbook

## BG PURCHASE ORDER SAMPLE





# MEMBER HANDBOOK

## CANADIAN BG PURCHASE ORDER SAMPLE





# MEMBER HANDBOOK

## PURCHASE ORDER CONTINUATION PAGE SAMPLE



# MEMBER HANDBOOK

## WAREHOUSE INVENTORY ORDER FORM

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| INV01 | | WORLDWIDE DISTRIBUTORS | | 10/02/14 | | | PAGE 11 |
| | SHOOTING SPORTS | For Sale Inventory | | | | | |

| ITEM# LOCATION | DESCRIPTION | VENDOR NAME VEN STOCK# | QTY AVAIL | COST | PACK | UNIT | |
|---|---|---|---|---|---|---|---|
| 456419 XX4 | PRIMOS - THE CAN, LIL CAN, BLISTER | ATK SPORTING GRO 731 | 12 | 5.59 | 12 | EA | -------- ----- |
| 400310 SLC | 16' LADDER STAND FOXHOUND 19.5"X15" PADDED SEAT W/ ARM RESTS | BIG DOG TREESTAN BDL-101 | 10 | 54.96 | 1 | EA | -------- ----- |
| 295541 SLH | 17' BIG BUD LADDER STAND WIDE 40" SEAT CUSHION, FLIP-UP SHOOTING RAIL, 2-PERSON 500# RATED | BIG DOG TREESTAN BDL-455 | 27 | 80.53 | 1 | EA | -------- ----- |
| 295526 Y1 | 20' DUAL STEP CLIMBING STICK EXTRA WIDE, DOUBLE SIDED STRAPS INCLUDED | BIG DOG TREESTAN BDSL-20 | 30 | 31.42 | 1 | EA | -------- ----- |
| 415857 X34 | HUB GROUND BLIND FLIP-UP DOOR ENTRY SHOOT THROUGH MESH CARRYING CASE, TIE DOWNS | BIG DOG TREESTAN TSGB-300 | 56 | 65.83 | 2 | EA | -------- ----- |
| 441565 1D8R | GUN SCRUBBER - 10 OZ REG. $6.60 HOT SHOW #144 | BIRCHWOOD CASEY 33340 | 29 | 4.24 | 6 | EA | -------- ----- |
| 322006 SLIJK | TRUE FLIGHT ORANGE DOME 135 PK 63 CARTONS PER PALLET | CALDWELL INDUSTR TF135 | 369 | 9.70 | 63 | EA | -------- ----- |
| 440420 Q12 | STANDARD MALLARD 15.50" 8 DRAKES, 4 HENS | CASL INDUSTRIES D73156D | 33 | 20.99 | 1 | EA | -------- ----- |
| 441841 U9 | SE SINGLE RIFLE CASE - REG. $13.93 - MAIN EVENT #867 | PLANO MOLDING CO 10-10475 | 44 | 13.49 | 6 | EA | -------- ----- |
| 454169 | CUTLERY/CARE GIFT BOX - INCL: GUT HOOK FIXED BLADE KNIFE W/ SHEATH, REM CLOTH, REM OIL, SHARPENING STONE - S/R $39.95 | REMINGTON ARMS C 17702 | 10 | 4.50 | 1 | EA | -------- ----- |
| 460821 1C8R | AXIS II XP PACKAGE MOSSY OAK BREAK-UP - .223 | SAVAGE ARMS INC 22239 | 6 | 328.50 | 1 | EA | -------- ----- |

Member #        Member Name                                   Date
      ----------      ---------------------------      -----------------
Buyer
      ----------------------------------------------------------

-----------------------------------------------------------------

The FOB Worldwide cost includes all upcharges,
repack charges, and freight to WDI. If the
cost shown is "0", the item is being updated.

| F O R   W O R L D   W I D E   U S E |
|---|
| Date Filled / By  :  Terms  / Inv.Total |
| /  :  /  |
| /  :  /  |
| Date Shipped/  By  : |
| /  : |
| /  : |



# Member Handbook

# INVOICING



# MEMBER HANDBOOK

# DROPSHIP INVOICES

Merchandise purchased on a Dropship order is invoiced directly from the vendor to Worldwide. Upon receipt of the invoice it is affixed with a barcoded sticker, or a black and white computer stamp (see example on page 22). The sticker/computer stamp includes a date and an ID number. The date is used to calculate the Member payment due date. The ID number on the sticker/computer stamp is **the Worldwide ID (WW ID)number and should be referenced on any correspondence including checks/ remittances.**

The original vendor invoice with the Worldwide ID number is then scanned and is accessible to the Member electronically through LaserVault (Worldwide's digital imaging system accessible on the Worldwide website). Upon request invoices can also be e-mailed, or sent via postal mail (fees may apply for this service). **The Member pays Worldwide for all dropship invoices, not the vendor.** Members who receive vendor invoices directly from the vendor should forward these invoices to Worldwide for processing.

Payment of Member invoices are DUE TO WORLDWIDE on or before the due date.  A full explanation of calculating dropship due dates is on page 21.

**Accessing Invoice History:**
Invoices and other account information, including statements are accessed electronically from the LaserVault imaging system. Access to the LaserVault imaging system is from the "Members Only" page of the Worldwide website (www.wdi-wdi.com).

You will receive an email from Worldwide that alerts you that we have processed an invoice(s) that belongs to you. This email is sent out the day following the date it was processed. Each invoice that we have processed will be listed on the correspondence and it will be available to view on LaserVault. See a sample on page 28.

Before this system can be used the LaserVault Web Viewer must be installed on each PC accessing LaserVault.  From the Members Only page click the LaserVault button.  The LaserVault page contains a link to a tutorial and a link to the LaserVault login.  The tutorial will explain the installation of the web viewer, the user interface and searching (including the use of wildcards).  We strongly recommend reviewing the tutorial before beginning.

There are various ways to search for scanned images of invoices. These are explained in the tutorial. Samples of the search screens in the LaserVault imaging system are on pages 25-27.

The LaserVault login can be accessed directly at https://member.wdi-wdi.com/lvdmsweb. Each Member Retailer will be assigned one user name and password.  Please contact Sherry Mennenga at 1-877-894-9934 ext. 317 or sherrym@wdi-wdi.com to request a password.

**Paying Dropship Invoices:**
- **Invoices with a discount or full freight allowance must be paid within the payment terms to qualify for the deductions (see page 21 for discussion on calculating dropship due dates). Member's remittance to Worldwide must indicate those deductions and must show the total amount being paid on the invoice. If your account is past due, or if an invoice is paid past the allowable discount rate, the discount may be disallowed.**
- Payment of **Dropship** invoices should always be made to Worldwide, **NEVER** the vendor.



OCTOBER 2014

# MEMBER HANDBOOK

## DROPSHIP INVOICES (CONTINUED)

- Only the Worldwide ID number and payment dates are valid references for payment of dropship invoices.

- Discrepancies between invoices and Member purchase orders (or acknowledgement) must be reported to the Worldwide Accounting Department before the member due date.  This allows the Worldwide Accounting Department time to make adjustments to the invoice prior to payment. Discrepancies reported after the invoice has been paid will be subject to charge back if Worldwide is unable to collect from the vendor.

- Late charges will be assessed on any invoices (or part thereof) that are past due at the end of any given month.

- Statements are available through LaserVault, or may be requested in Excel format through our Accounts Receivable Department.

- Payment to Worldwide can be made via ACH, wire transfer or check. Send payment instructions for ACH (invoice number, amounts and discounts taken) to: ACH@wdi-wdi.com or fax to (253)395-8725.



OCTOBER 2014

# MEMBER HANDBOOK

# CALCULATING WORLDWIDE DROPSHIP DUE DATES

Use the following charts to help you calculate the due dates on Dropship invoices.

**Net Invoices**
Terms from sticker date or computer stamp.

**Examples**

| Terms | Pay Date |
|-------|----------|
| Net 30 days | 30 days from the sticker date |
| Net 45 days | 45 days from the sticker date |
| Net 60 days | 60 days from the sticker date |
| Net 90 days | 90 days from the sticker date |

**Invoices with Discounts**
Members are eligible for any and all discounts reflected on an invoice for Dropship orders providing:
- •Payment is received at Worldwide within the discount terms of the invoice **and**,
- •The Member's **total account** is current

Reminder: *Calculate your discounts on product only (which is not always the invoice total).
**No discount on freight!**

**Examples**

| Terms | Pay with Discount | Pay Net |
|-------|-------------------|---------|
| 2% 10, Net 30 days | 30 days from the WW ID date | 30 days from the sticker date |
| 2% 30, Net 60 days | 30 days from the WW ID date | 60 days from the sticker date |
| 5% 60, Net 61 days | 60 days from the WW ID date | 61 days from the sticker date |

Worldwide offers extended terms on many dropship vendor invoices. A summary of extended terms for specific vendors is available annually. Watch your invoices with a sticker that indicates that there are additional Worldwide extended terms! See attached example on next page (page 22).



OCTOBER 2014

# Member Handbook

## INVOICE SAMPLE



**Attention:  Accounts Payable Department**

**IMPORTANT NOTIFICATION REGARDING WORLDWIDE INVOICING**

Beginning November 1, 2011, you will receive two types of drop-ship invoices from Worldwide:

1.  The original vendor invoice with the pink barcoded sticker.  These invoices have been mailed or faxed to Worldwide.



2.  A printed copy of the vendor invoice with a black and white computer stamp located in the top of the first page.  These invoices have been emailed to Worldwide and were automatically downloaded and stamped into our Laservault scanning system.





You will reference this number when sending payment to Worldwide

For questions about invoices, please contact the Billing & AP Manager (253) 872-8746 ext. 332.



OCTOBER 2014

# MEMBER HANDBOOK

## CLASS C, CLASS I & OTHER INVOICES
### (DOMESTIC AND IMPORT GOODS THAT SHIP THROUGH
### THE WORLDWIDE DISTRIBUTION CENTER)

Merchandise purchased on a **Class C** or **Class I** order is shipped from the Worldwide Distribution Center and is invoiced by the Worldwide Accounting Department (see sample on page 24).

**Paying Class C Invoices:**
- The payment on these invoices should be made as per the due date printed on the invoice.
- The Worldwide invoice date reflects the day it is placed in your bay and available for shipment per your shipping instructions. **Depending on your shipping instructions the invoice may be due before the merchandise is shipped.**  Worldwide must pay according to vendor terms without regard to Member requested ship dates.
- **Payment terms are as stated on the invoice.**

**Miscellaneous Invoices:**
These are invoices generated by the Worldwide Accounting Department that include: membership dues, dropship service charges, co-op advertising credits, chargebacks, freight charges, warehouse accommodations, postage and Class C credits.  These invoices all have Net 30 terms.



# MEMBER HANDBOOK

## MISCELLANEOUS INVOICE SAMPLE





# Member Handbook

## LASERVAULT ON-LINE SCREENS





# MEMBER HANDBOOK

## LASERVAULT ON-LINE SCREENS





# MEMBER HANDBOOK

## LASERVAULT ON-LINE SCREENS





# Member Handbook

## INVOICE EMAIL ALERT

**From:** WD Invoice
**Sent:** Current Date
**To:** Member Name
**Subject:** Your Worldwide Invoices

Dear Worldwide Member:

Below please find the Worldwide invoice(s) that were processed yesterday for the following: drop ship service charges, dues, postage, Class C and I purchases, rebates, COOP advertising, credits etc. If you would like to view an individual invoice, click on the "View" link and the invoice image will automatically appear. If you want to print the invoice, please use the "print" button for LaserVault and not the "file/print" in Internet Explorer. If you want to print all of the invoices at once, click the LaserVault link below, sign in and choose "batch print" button at the top right corner. When invoices appear highlight all of the invoices and select print.

If you have any questions, please contact Pam Zulfer, AP/Billing Manager - pamz@wdi-wdi.com

Click here to login to LaserVault

| View | Invoice Number | Invoice Date | Due Date | Order Number | WWOF Number |
|------|----------------|--------------|----------|--------------|-------------|
| View | 1234567 | 09-18-2014 | 10-18-2014 | ABC123 | |
| View | 2345678 | 09-18-2014 | 12-17-2014 | XYZ789 | |



28                                    OCTOBER 2014

# CREDITS, CLAIMS & DISCREPANCIES

# Member Handbook

## FILING A WORLDWIDE CLAIM

Any issues or discrepancies on invoices should be addressed by filing a claim electronically (see example on page 33). An electronic claim form is available upon request and should be submitted to: claims@wdi-wdi.com. CLAIMS MUST BE FILLED OUT COMPLETELY in order to be processed, and must include all corresponding documentation as an electronic attachment (pdf etc.).

## Dropship Claims/Defectives

**Dropship Claims:**
- If merchandise is being returned, it is the Member's responsibility to request a return authorization (R/A) from the vendor before filing the claim with Worldwide. **The merchandise should be returned to the vendor, not to the Worldwide Distribution Center. Be sure to include the R/A number, the date of return and the tracking number on the claim form.**
- Upon receipt of a completed claim form, Worldwide will email the approved claim back to the member with a reference number verifying we have issued a credit to your account.
- If after a certain time period, Worldwide has not been able to collect the claim from the vendor, the Member will be charged back. A new credit will be issued to the Member when/if the vendor issues credit to Worldwide for the claim. If a claim is denied, a letter will be sent to explain the reason.
- If a claim is submitted to the vendor and there are no invoices for Worldwide to deduct the claim from, Worldwide will attempt to collect the open credit from the vendor. In the event the vendor refuses to issue a cash refund, Worldwide will chargeback the open claim to the member.
- Vendor credit memos received by Worldwide that have not yet been claimed by a Member will be forwarded to the Member from the Worldwide Accounting Department. The credit memo will display a label with a WW ID number. When using the credit always reference the WW ID number that appears on the sticker. Please reference this number on all remittance notices sent along with payment.
- Filing claims timely is extremely important. Vendors may deny the claim if not filed timely.
- A separate claim form must be used for each Vendor and Vendor Invoice number.

**Dropship Defectives:**
Each vendor has an established procedure for the return of defective and/or warranty merchandise. As a general rule, any merchandise purchased on a Dropship order can be returned directly to the vendor after the Member calls the vendor and receives a return authorization. Members should then fill out the Worldwide Claim Form as instructed above. Upon receiving the claim, Worldwide will chargeback the vendor and issue the credit back to the Member.



October 2014

# Member Handbook

# CLASS C CLAIMS/DEFECTIVES

**Class C Claims:**
- Use the electronic Worldwide Claim Form provided to all Members (see sample on page 33).
- For incorrect shipments, shipment of canceled goods or anything that needs to be returned to the Worldwide Distribution Center, **Members must first call the appropriate category buyer at Worldwide to obtain a return authorization number (R/A).**  When the merchandise is returned the R/A number needs to be listed on the outside of the box.
- The Worldwide Distribution Center Manager will inspect the returned merchandise.  If the claim is approved,the Worldwide Claim Form will be emailed to the member verifying we have issued a credit to your account.  If the invoice is still open on the Member's account, the credit will be applied toward the invoice.  If the credit zeros out the invoice total, no credit will be sent out.
- No Class C claims over 6 months old will be processed.
- **A separate claim form must be used for each Invoice #.  Claims <u>under $10 will not be accepted</u> by Worldwide.**

**Class C Defectives:**
Each vendor has established procedures for the return of defective merchandise and/or warranty merchandise.  Class C purchases are often a result of a closeout with no defective returns allowed.  Other Class C purchases may have procedures for the return of defective merchandise.  Members must call the appropriate category buyer at Worldwide to discuss the return of Class C defective merchandise.

If merchandise is returned, it will require an R/A number either from the Vendor or Worldwide.

# CLASS I CLAIMS/DEFECTIVES

**Class I Claims:**
If merchandise is being returned because of incorrect shipments, use the electronic Worldwide claim form provided to all Members.  Members must first call the appropriate category buyer at Worldwide to obtain a return authorization (R/A) number.  When the merchandise is returned the R/A needs to be listed on the outside of the box.  The Member will receive a credit on a Worldwide miscellaneous credit/invoice.

**Class I Defectives:**
Defective policies for Class I import merchandise vary by program.  These policies are available at the time the merchandise is purchased.  Call the appropriate category buyer for details on the defective policy on specific import programs.

# VENDOR REBATES

One of the many benefits of being a Worldwide Member is receiving rebates for specific vendor purchases made through the cooperative. We negotiate special rebate programs with certain vendors, track your purchases, submit the rebate claim, follow-up with the vendor and credit your Worldwide account as per the rebate schedule. Members do not need to do anything.



October 2014

# MEMBER HANDBOOK

## PREPAID COMMON CARRIER SHIPMENTS

**\*\*\*Only for shipments from the Worldwide Distribution Center in Kent, WA\*\*\***

## Freight Claim Procedures
### (SHORTAGES, DAMAGED GOODS)

When shipping to a Member out of the Worldwide warehouse, unless instructed otherwise by the Member, Worldwide will choose a common carrier with the best freight rate and will "prepay" (and bill Member later) all shipments from our Kent DC. The reason we prepay freight is to ensure that our Members will receive <u>Worldwide's discounted rates.</u> This also allows Worldwide to audit Member freight bills for accuracy.

However, Worldwide does not file claims against the carrier for damages and shortages. The Member must file the claim with the freight carrier - not with Worldwide. This allows our Members to file for their <u>full</u> Worldwide Class C invoice value (not Worldwide's invoice from the vendor). Members (the consignee) have all the details/notations of damages and/or shortages. Worldwide does not get involved unless there is a dispute between our Member and the originating carrier after the claim is filed.

<u>Members should not refuse damaged freight.</u> Members can recover their time for the labor involved to sort through the damaged merchandise and they can also recover the cost of the actual damaged merchdise. This practice ensures that our Members rececive at least some product from the shipment, as Worldwide does not always have backup stock. It also ensures our Members receive "their" invoice cost (not Worldwide's) for damaged merchandise as well as labor costs invested.

Please file all freight claims for Worldwide DC shipments <u>with the originating common carrier.</u> Most carriers have a claim form online or you can file online.

At this time Worldwide uses:

| **Freight Carrier** | **Website** |
|---|---|
| **Peninsula Freight Lines** | peninsulatruck.com |
| **Old Dominium Freight Lines** | odfl.com |
| **Roadrunner Dawes Freight Systems** | rrts.com |
| **USF Reddaway** | usfc.com |
| **YRC Freight** | yrcfreight.com |

<u>Do not short pay freight invoices when making your payment to Worldwide.</u> Worldwide has already paid the freight invoice in full. If you do not receive a settlement from the carrier within 60 days, please contact Worldwide's Traffic Manager for further instructions. (SueS@wdi-wdi.com) 253-872-8746 ext. 323

If at anytime, **for any reason,** a Member is dissatisfied with the delivering carrier, please contact the Worldwide warehouse for alternate carriers.



OCTOBER 2014

# Member Handbook

# CLAIM FORM SAMPLE

| MERCHANDISE CLAIM/ADJUSTMENT/CREDIT MEMO | CLAIM No. | **WW** | 24-8010016 |

MEMBER: PLEASE SUBMIT THIS FORM IMMEDIATELY UPON DISCOVERY OF DISCREPANCY. CLAIM FORM MUST BE FILLED OUT COMPLETELY OR WILL BE RETURNED TO MEMBER

**REASON FOR CLAIM**

(A) Defective Item          (E) Duplicate Shipment
(B) Damaged Freight         (F) Freight Allowance
(C) Shortage                (incl. freight bill with claim to WW)
(D) Other (Explain)    Not what we ordered

THE ABOVE CLAIM # AND THE WORLDWIDE INVOICE # OR STICKER # BELOW MUST BE USED IN ANY CORRESPONDENCE

| Date of Claim | Worldwide Invoice#/Sticker # |

## worldwide
### distributors
P.O. BOX 88607 - SEATTLE, WA 98138
PHONE (253) 872-8746 - FAX (253) 872-7603

| VENDOR LISTED BELOW | | | WORLDWIDE MEMBER LISTED BELOW | | | Member # |
|---|---|---|---|---|---|---|
| Vendor Name | | | Member Name | | | |
| Street Address | | | Street Address | | | |
| City | State | Zip | City | | State | Zip |
| Vendor Invoice # | Vendor Invoice Date | Date of Return | Worldwide or Member PO# | | Return Auth. # | |

| VENDOR STOCK # | CODE | DESCRIPTION | UNITS RECEIVED | UNITS INVOICED | UNIT COST SHOULD BE | EXTENDED DIFFERENCE (INCREASE/DECREASE) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | $            - |
| | | | | | | $            - |
| | | | | | | $            - |
| | | | | | | $            - |

| ADD ANY PREPAID RETURN FREIGHT | | |
|---|---|---|
| WE ARE    INCREASING DECREASING    THIS INVOICE (CIRCLE ONE) | NET ADJUSTMENT | ⇨ |
| PERSON PREPARING FORM: | WORLDWIDE USE ONLY: | |

| **VENDOR:** SEND CREDIT MEMO DIRECTLY TO WORLDWIDE OFFICE AT ADDRESS PRINTED ABOVE | **VENDOR:** SEND ALL CORRESPONDENCE, MERCHANDISE OR RETURN AUTHORIZATION DIRECTLY TO MEMBER LISTED ABOVE |



# Member Handbook

# Co-op Advertising



# MEMBER HANDBOOK

# WORLDWIDE CO-OP ADVERTISING

Worldwide is constantly seeking co-op advertising money from new and existing vendors on behalf of Members.  To aid in this effort, Worldwide has developed a program for monitoring the payment of co-op claims to ensure maximum response to Member claims.  All co-op claims (for goods purchased through Worldwide) must be processed through the Worldwide Accounting Department.  Claims to vendors will be filed on the Member's behalf.  Please note that not all vendors offer co-op within Worldwide programs.  With some specific programs, Worldwide negotiates a significantly lower price in lieu of co-op benefits.  Because programs can change year to year, Members should refer to the current co-op manual, accessible on the Worldwide website (Documents/Forms) to determine what benefits are available. All claims based on Worldwide purchase accruals are subject to a 10% (up to $50) co-op fee to cover processing costs.

**Claim Procedure:**
- Before running an ad, make sure it adheres to the requirements set forth by the manufacturer as listed in the current co-op manual.  If there is uncertainty about a specific requirement or more detailed information is needed, please contact the Worldwide Co-op Advertising Department.

- After the ad runs, obtain the necessary proof of performance documentation. Examples include the original newspaper tear sheet, certified radio or TV script and a copy of the advertising invoice. Be aware that most companies have very strict time limits and will not honor claims that are not submitted within their required guidelines.

- Fill out the Worldwide Advertising Claim Form (see sample on page 37) or go to the Worldwide website (Documents/Forms) where the form is available online and forward along with the necessary documentation to Worldwide: Co-op Advertising, PO Box 88607, Seattle, WA 98138-0607.

- Upon receipt of Member claims, a Worldwide Co-op Advertising Claim Form will be completed and submitted to the vendor along with proof of performance (see sample on page 38).  This form will identify the retailer as a Worldwide Member and therefore eligible for Worldwide co-op accruals.  To help defray the cost of processing the claim, Worldwide retains a small portion of the reimbursement (10% up to a maximum of $50 per claim).

- Once Worldwide receives the money from the vendor for a claim the Member will receive a credit net of Worldwide's fee.



OCTOBER 2014

# MEMBER HANDBOOK

# CO-OP ADVERTISING STANDARD PROOF OF PERFORMANCE REQUIREMENTS

## General Interest Newspapers

General interest newspapers whose rates and paid circulation are published and can be verified by independent audit (with primary coverage in Members' trading areas) will qualify.  Free shoppers may or may not qualify, depending on the vendor.

- An original full-page tear sheet for each vendor claimed, showing the name and date of the publication. Absolutely no photo copies.

- A copy of the publication invoice.

- A Worldwide Claim Form showing the name of the ad, ad date, claim amount and product description  (see sample on page 37).

## Newspaper Inserts, Supplements, Circulars

- One complete copy of the printed piece for each vendor claimed.

- The printer's invoice.

- A Post Office mailing receipt or other certification of circulation.

- A Worldwide Claim Form showing the name, ad date, claim amount and product description (see sample on page 37).

- Current vendor logo must be displayed.

## Radio & Television

- An invoice from the station showing date and rate charges, length of each commercial, cost per commercial, total cost and products advertised.

- A copy of the script for each vendor claimed.

- A certified affidavit of performance signed by a duly authorized officer of the station.  This includes the ANA/RAB documentation for radio or the ANA/TVB documentation for TV.  Sometimes this certification is included with the invoice.

- A Worldwide Claim Form showing the name, ad date, claim amount and product description (see sample on page 37).



OCTOBER 2014

# Member Handbook

## ADVERTISING CLAIM FORM SAMPLE

**Worldwide
Advertising Claim Form**

| Date: | | | |
|---|---|---|---|
| Your Ref: | | WW Claim No. *(Internal Use Only)*: | |

| Member: | | Member No. | |
|---|---|---|---|
| Address: | | | |
| C/S/Z: | | Vendor No. | |
| Vendor: | | | |

| Ad Date | Media Name (i.e., Goodly Lakes Newspaper) | Ad Name (i.e., Summer Fun) | Amount |
|---|---|---|---|
| | | | |
| | | Product Description (i.e., Z Shoes) | |
| **Ad Date** | **Media Name** | **Ad Name** | **Amount** |
| | | | |
| | | Product Description | |
| **Ad Date** | **Media Name** | **Ad Name** | **Amount** |
| | | | |
| | | Product Description | |

Was this advertisement pre-approved by the vendor? *(circle answer)*      YES   NO
If so, by whom:
Please provide the pre-approval contact info:

**Mail Claims To:**

Worldwide Distributors
**Attn: Terra Crull**
P.O. Box 88607
Seattle, WA 98138
Ph: 253-872-8746 Ext. 355
Fax: 253-872-7603
terrac@wdi-wdi.com

Complete the claim form & attach your proof of performance,
include contact info for advertisements that have vendor pre-approval.



# MEMBER HANDBOOK

# CO-OP ADVERTISING CLAIM

**REMIT TO:**



**worldwide** distributors

P.O. Box 88607
Seattle, Washington
98138-0607
(253) 872-8746
Fax (253) 872-7603

**IMPORTANT:**
Return yellow copy #2 with remittance.
REMIT ONLY TO THE ADDRESS INDICATED.

24585
NORCROSS SAFETY PRODUCTS LLC
ATTN: KELLY DE POOTER
1136 SECOND ST
ROCK ISLAND        IL 61201

| Please Refer to This Number on All Correspondence | A | 67563 |
|---|---|---|
| DATE: | | JUN/27/05 |
| MEMBER NO.: | | 460 |
| WORLDWIDE CO-OP ADVERTISING ACCOUNT | | |
| SUNBIRD SHOPPING CENTER | | |

**ALL CLAIMS NOT PAID WITHIN 45 DAYS WILL BE DEDUCTED FROM INVOICE**

| MEDIA NAME | DESCRIPTION | MEMBER REF. # | DATE OF AD | QTY. | PRICE | UNIT | AMOUNT |
|---|---|---|---|---|---|---|---|
| LAFRANBOISE | 16 PVC KNEE BOOT | 6680 | 03/14/05 | 1.00 | 59.57 | | 59.57 |

REMARKS:
2005 SPR WORKWEAR MAILER

Acct# 309/786-8670          BY: TERRA

| | OUR AMOUNT | 59.57 |
|---|---|---|
| PROGRAM: 50.00 % | YOUR AMOUNT | 29.79 |

MEMBER COPY



# Member Handbook

# Worldwide
# Dues & Fees



# MEMBER HANDBOOK

# SCHEDULE OF WORLDWIDE CHARGES OVERVIEW

Executive Summary: Worldwide supports the services it provides to retailers, in part, with fees paid by Members on their purchases through the cooperative.  Prospective Members are also assessed fees based on purchases they make through the cooperative during their initiation period.

**Class A - Dropship fee for Members:**
About 95% of all purchases made by Members are dropshipped directly from the vendor to their store.  This is done to minimize costs and maximize efficiency.  As a Member all dropship purchases are assessed an upcharge based on the following tiered scale:

| Annual Sales Volume | Upcharge Fee |
| --- | --- |
| $0 - $1,300,000 | 0% – 1.5% |
| $1,300,001 - $15,000,000 | 0% – 0.25% |
| Over $15,000,000 | 0% |

Members receive special discounted dropship rates on certain vendor programs.  Dropship service charges are also based upon the accumulated purchases made by Members during each year.  The result is that most Members pay significantly below the maximum 1.5% rate on their aggregate purchases through Worldwide.

**Class A - Dropship fee for Prospective Members:**
As a Prospect all dropship purchases are assessed a flat 3% upcharge fee.  This upcharge is billed monthly.

**Class C – Domestic Goods Through Worldwide Distribution Center:**
Both Members and Prospects may purchase merchandise through Worldwide's distribution centers.  Fees vary on such purchases based on volume and costs to deliver the product.  As Worldwide is a Member-owned cooperative these fees are kept to an absolute minimum.  Pricing for most Class C products include 6% above Worldwide's cost plus freight to Worldwide. All merchandise is FOB Worldwide, Freight Collect (or Prepaid & Invoiced to protect discounts).

**Class I – Import Goods Through Worldwide Distribution Center:**
Both Members and Prospects may purchase imported merchandise through Worldwide's distribution centers including our Private Label.  Fees vary on such purchases based on volume and costs to provide the product.  As Worldwide is a Member-owned cooperative these fees are kept to an absolute minimum.  Pricing for most Class I products include 10% above Worldwide's cost plus freight to Worldwide. All merchandise is FOB Worldwide, Freight Collect (or Prepaid & Invoiced to protect discounts).

**Other Membership Fees:**
- Once a Prospect fulfills their initiation period they are eligble for membership, which requires an investment as a shareholder. Shareholders are entitled to annual dividends.
- Members are assessed a monthly fee of $410.
- Members or Prospects that would like more than one "ship-to" address from the Worldwide Distribution Center are charged an additional $50 per month up to a maximum of $150 per month.

**Credit Insurance:**
**Credit Insurance is required for first three years of membership and each subsequent year thereafter, as determined by Worldwide. Quarterly billings for premiums will be based on the rolling average of the member's receivables.**



# Member Handbook

## STAFF REFERENCE GUIDE

| NAME | TITLE | PHONE EXT. | E-MAIL ADDRESS |
|------|-------|------------|----------------|
| **EXECUTIVE** | | | |
| Mark Williams | President | 316 | markw@wdi-wdi.com |
| Deb Hammond | VP Sales & Marketing | 349 | debh@wdi-wdi.com |
| **SOFTLINES** | | | |
| Jon Wright | Merchandise Manager Men's, Women's and Childrens Apparel, Footwear | 311 | jonw@wdi-wdi.com |
| **HARDLINES** | | | |
| Steve Quarders | Merchandise Manager Shooting Sports, Fishing, Toys, Camping, Lawn/Garden/Patio, Athletics,Hardware, HomeWorld | 314 | steveq@wdi-wdi.com |
| **MARKETING/ADVERTISING** | | | |
| Judy Cyphers | Director of Member Relations | 312 | judyc@wdi-wdi.com |
| **ACCOUNTING** | | | |
| Donna Johnson | Controller | 313 | donnaj@wdi-wdi.com |
| David Jueschke | Credit Manager | 328 | davidj@wdi-wdi.com |
| Terra Crull | Co-op Advertising & Rebates | 355 | terrac@wdi-wdi.com |
| Pam Zulfer | Billing/Acounts Payable | 332 | pamz@wdi-wdi.com |
| **IT** | | | |
| Chris DeLaRosa | Network Administrator | 310 | chrisd@wdi-wdi.com |
| Sherry Mennenga | Programer/Analyst/Passwords | 317 | sherrym@wdi-wdi.com |
| **WAREHOUSE** | | | |
| Sue Shaughnessy | Warehouse & Traffic Manager | 323 | sues@wdi-wdi.com |



October 2014

# MEMBER HANDBOOK

## GLOSSARY OF TERMS

Like any business, Worldwide uses specific terms when defining it's business procedures. Below are definitions to help you become familiar with our terms.

**WWOF**: A Worldwide Order Form (WWOF) is a form that contains product information and terms of sale. Members can use this form to both review specific purchase information and to order the product. WWOF's can be transmitted by mail, fax, email and/or at trade shows depending on individual Member's preference.

**Worldwide Purchase Order Form**: Worldwide Purchase Orders are forms that can be used by Members to order product directly from vendors. The forms instruct the vendor to ship goods to the Member and to bill Worldwide. They also contain terms and conditions of sale that are designed to protect the rights of Members in the event of a dispute with a vendor.

**"BG" Worldwide Purchase Order Form**: This Worldwide Purchase Order form is used by both Prospects and by Members who have credit limitations on their purchasing through Worldwide. The form is identified by the letters "BG" preceding the purchase order number in the upper right-hand corner. Unlike Worldwide Purchase Order Forms, the BG form must be submitted to Worldwide, not the vendor.

**Dropship Purchases**: Purchases of goods that will be shipped directly from a domestic source to a Member's location is referred to as a Dropship purchase.

**Class C/Domestic Purchases**: Purchases of goods that are shipped from a domestic source through the Worldwide Distribution Center and then to a Member's location is referred to as a Class C purchase.

**Class I/Import Purchases**: Purchases of goods that are shipped from an international source through the Worldwide Distribution Center and then to a Member's location is referred to as a Class I purchase.

**Miscellaneous Invoices**: Invoices or credit memos for miscellaneous services such as monthly dues, service charges and rebates.

**Acknowledgment**: Document confirming receipt of order.

**Bay**: A designated area in the Worldwide Distribution Center where Member goods are held awaiting shipment to the stores. Goods are shipped per store instructions. Members may request goods held until they accumulate a specific shipping weight.

**R/A**: Return Authorization, issued by a vendor or Worldwide, to authorize return of all or part of a shipment. Authorization is usually in the form of an R/A number that must be included on the box and on all paperwork associated with the returned goods.

**Prospective Member**: Independent retailers allowed to use Worldwide services but have not yet become members.

**LaserVault**: Worldwide invoice imaging system.



OCTOBER 2014

*EXHIBIT E*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS*
*TO MOTION OF THE COMMITTEE FOR DERIVATIVE*
*STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*

**WORLDWIDE UCC**

Filing Number: 1133295000027
Date: 01/09/2020
Time: 10:42 AM
STATE OF MINNESOTA
Office: Office of the Minnesota
Secretary of State

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
**Lori Mcleod**
**PO Box 88607**
**Seattle, wa  98138**

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
Tea Olive I, LLC

| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| 3435 Promenade Ave, Ste 1001 | Eagan | MN | 55123 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
Worldwide Distributors

| **MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| PO Box 88607 | Seattle | WA | 98138 | USA |

## COLLATERAL
COLLATERAL DESCRIPTION
(Exhibit A)

Debtor hereby grants Creditor a continuing purchase money security interest in all of Debtor's inventory and equipment financed by Creditor for the benefit of Debtor or sold or distributed to Debtor by Creditor, wherever located, now owned or hereinafter acquired and all proceeds therefrom, to secure the payment of Debtor's indebtedness to Creditor.  The parties intend by this grant of purchase money security interest that each item of inventory and equipment shall secure both its own cost and any other indebtedness as permitted under Article 9 of the Uniform Commercial Code as now enacted in this jurisdiction, or in force at any relevant time.  In addition to the security interest granted above, Debtor hereby grants Creditor a continuing security interest in all of the following, wherever located, now owned or hereafter acquired: all inventory (including without limitation all returns, repossessions and parts), all equipment, furniture and fixtures, all general intangibles, instruments, accounts, chattel paper, contract rights, security interests and agreements, and all cash and non-cash proceeds, products, additions and accessions to any of the foregoing above to secure the payment and performance of all of Debtor's obligations and indebtedness to Creditor, regardless of the form of such obligations and indebtedness, arising at any time under this Agreement or otherwise, together with interest thereon and any renewals or extensions thereof, and whether such indebtedness and obligations are from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred.

## ADDITIONAL INFORMATION(IF ANY)
**ADDITIONAL FILER REFERENCE DATA:**#311

*EXHIBIT F*

*TO*

*OBJECTION OF WORLDWIDE DISTRIBUTORS*
*TO MOTION OF THE COMMITTEE FOR DERIVATIVE*
*STANDING TO PURSUE CLAIMS AGAINST WORLDWIDE*

**MARCH 18, 2021 LETTER**



March 18, 2021

<span style="font-variant: small-caps">Via E-Mail</span>

Douglas S. Draper
650 Poydras Street, Suite 2500
New Orleans, LA 70130
ddraper@hellerdraper.com

**Re:**   *In re Tea Olive I, LLC d/b/a Stock+Field*
          **Case No.: 21-30037**

Dear Mr. Draper:

As you are aware, we represent Tea Olive I, LLC d/b/a Stock+Field (the "Debtor"), the debtor in the above-captioned bankruptcy case. We are in receipt of your letter dated March 9, 2021, on behalf of the official committee of unsecured creditors (the "Committee"), requesting the Debtor's consent to the Committee asserting claims against Second Avenue Capital Partners LLC and its related lenders (collectively, "Second Avenue") and Worldwide Distributors ("Worldwide").

In order to proceed derivatively on behalf of the bankruptcy estate in the Eighth Circuit, a party normally must demonstrate (1) that it petitioned the debtor in possession to bring the claims and the debtor refused, (2) the claims are colorable, (3) the party sought permission from the bankruptcy court, and (4) the debtor in possession unjustifiably refused to pursue the claim. *In re Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008). If the debtor in possession consents to a party proceeding on behalf of the estate, the party must still seek court permission to proceed and must show (1) the suit by the party is in the best interest of the bankruptcy estate and (2) the suit is necessary and beneficial to the "fair and efficient resolution of the bankruptcy proceedings." *Id.* at 902.

The Debtor has waived the claims the Committee seeks to assert against Second Avenue pursuant to the Final Order (I) Authorizing Use of Cash Collateral; (II) Affording Adequate Protection; and (III) Modifying Automatic Stay [Docket No. 144] (the "Final Cash Collateral Order"). Due to this waiver, the Debtor does not believe that it can consent to the Committee bringing such claims, and to be clear, the Debtor is not consenting or joining in the Committee positions against Second Avenue. However, the Final Cash Collateral Order does provide a challenge period for the Committee to assert any such claims. Thus, consistent with the Final Cash Collateral order, it is

Attorneys & Advisors   /   Fredrikson & Byron, P.A.   /   USA / China / Mexico
Main 612.492.7000        200 South Sixth Street, Suite 4000    Minnesota, Iowa, North Dakota
Fax 612.492.7077         Minneapolis, Minnesota 55402-1425    fredlaw.com

March 18, 2021
Page 2

not clear that the Committee requires the Debtor's consent to proceed with any claims against Second Avenue.[1]

The Debtor consents to the Committee pursuing the claims identified in your March 9 letter against Worldwide.  However, the Committee will need to prove to the Court that bringing claims against Worldwide is in the best interest of the estate and is necessary and beneficial to the fair and efficient resolution of the case.  *In re Racing Servs., Inc.*, 540 F.3d at 902.

Please contact me with any questions.

Sincerely,

*/s/ Steven R. Kinsella*

Steven R. Kinsella
*Attorney at Law*
**Direct Dial:** 612.492.7244
**Email:** skinsella@fredlaw.com

cc:     Clinton E. Cutler (via e-mail)
        James C. Brand (via e-mail)

72400785 v1

---

[1] Please note that the Final Cash Collateral Order limits the ability to use cash collateral to pay for any professional fees in relation to the pursuit of claims against Second Avenue.